# The Cumberland Valley Railroad Company's Appeal.

1. Three plaintiffs filed a joint bill against a railroad company, averring injury to their business in charging improper tolls, making discriminations against them, &c. A community of interest in the plaintiffs was necessary to sustain the bill.

2. One plaintiff was not specially injured in the matters charged; he had no *status* in court, and could not complain that the company had exceeded their franchises.

3. Unless it appears on the face of a bill in what there is a private injury, it is demurrable as to that.

4. A charge against a corporation for violating a public franchise being an injury common to the whole public, is a matter for the public, and not for an individual to redress.

5. The rule is, that where the injury is not greater to the plaintiff than to the inhabitants generally, the remedy is with the public.

6. In a bill the various matters charged are like counts in a declaration, which, if all good, although variant in their contents, but not misjoinders, a judgment on either will be sustained.

7. If the plaintiff sustain any charge in his bill which, if charged singly, would be followed by injunction, the bill should not be dismissed for mispleading.

8. Several causes of injunction, where there is privity between the plaintiffs and defendants, and where they relate to the same general matter or spring from a common cause, may be joined.

9. Charging two *sources* of right by a plaintiff renders a bill multifarious.

10. A bill is not multifarious in joining two causes of complaint growing out of the same transaction, where all the defendants are interested in the same right, or the relief sought is of the same general nature.

11. A bill is multifarious by the joinder of distinct, independent and separate causes of complaint requiring different defences and different decrees.

12. A railroad company had authority to place cars, &c., on their road, to permit individuals to place cars thereon, and to charge "on all goods, &c., transported on their road not exceeding four cents per ton per mile for toll and three cents for transportation." *Held*, that these were two subjects of charge, one for the use of the road, the other for power.

13. A railroad company may allow to its agents the privilege to buy and sell produce, &c., at the company's warehouses.

14. The warehouses of a railroad company are not for the public accommodation, but are necessary appendages to their business arrangements.

15. No individual has rights in railroad warehouses except as conceded to him by the company.

16. On a railroad up to its capacity to accommodate, equality must exist at the same rates of transportation, and as far as possible in accommodation.

17. A railroad company cannot discriminate in favor of itself or any of its employees as against other transporters.

18. A rule in injunction cases is, that an injunction will not ordinarily be granted under a prayer for general relief, but must be expressly prayed.

19. The court will not decree more than a plaintiff claims in his bill, whatever he may prove.

20. A plaintiff cannot, under a general prayer, ask for a decree different from that prayed for.

May 13th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Cumberland Valley Railroad Co.'s Appeal.]

Appeal from the decree of the Court of Common Pleas of *Cumberland county*: In Equity: No. 105, to May Term 1869.

To January Term 1867 of the Court of Common Pleas of Cumberland county, Robert C. Woodward, Andrew H. Blair, and Edgar Lee, filed a bill against The Cumberland Valley Railroad Company. The bill set out,

1. That the complainants were merchants in Carlisle, engaged in buying, selling and transporting grain, lumber, &c., and have made large investments in warehouses, cars, sidings, &c., on the line of the railroad, necessary and convenient for their business, and for several years have transported merchandise in their cars over the road agreeably to the charter of the company.

2. That the company has published a new "Freight Tariff," dated August 6th 1866, by which they demand from "individuals" owning cars rates of toll in excess of four cents per mile, the limit by their charter, and have collected, and still continue to collect and demand, from the complainants larger amounts than their charter allows.

3. That the company has engaged in commercial business, has employed agents at their warehouses to solicit trade, that the agents have so done, and are buying and selling grain, and other commodities, to the injury of the complainants in their business, and are affording greater facilities to the agents than to the complainants and other persons owning cars and doing business on the railroad.

4. That the company demand and collect greater tolls than are necessary to pay 12 per cent. of net profits on their capital expended.

5. That the company will not recognise the right of the complainants to have their cars carried over the railroad for less than is set forth in their "Freight Tariff," subjecting the complainants to pay the same toll for freight in their own cars as they demand for freight carried by the company's cars.

They prayed for relief:—

1. That the company be restrained from demanding and receiving from the complainants toll exceeding "four cents per ton per mile on all goods," &c., in the complainants' cars.

2. From engaging directly or indirectly in buying or selling grain or other commodities or other commercial business.

3. From demanding and receiving rates of toll greater than shall make dividends of 12 per cent.

4. For "such further and other relief in the premises as the nature and circumstances may require and to the court shall seem meet."

The defendants demurred:—

I. To the whole bill, because it is for several distinct and independent matters having no relation to each other.

1. The collection of greater toll than the charter allows.

2. Engaging in commercial business.

3. The collection of more toll than is necessary to pay 12 per cent.

4. The refusal to recognise complainants' right to have their cars carried for less than is fixed by the "Freight Tariff" and charging them the same toll for freight in their own cars as they charge for freight carried in the company's cars.

II. To the part of the bill charging that the company collects more toll than will pay 12 per cent. dividend, because the complainants are not proper parties to institute a suit for the breach of the charter.

III. To the part of the bill charging that the company refuse to recognise complainants' right to have their cars carried for a less amount than that set out in the "Freight Tariff," and charging them the same toll for freight carried in the complainants' cars as they charge other persons for freight carried in the company's cars: because

1. The complainants have no right to call on the company concerning such charge.

2. The subject is not within the jurisdiction of equity.

The defendants answered:—

1. That the complainants were not merchants, engaged in selling and transporting grain, lumber, &c.: that they had not invested large amounts of money in warehouses, cars, sidings, &c., and for several years past transported merchandise in their own cars. The complainants have no interests in common as merchants, they own no cars or other property in common, and are not doing business in common. Lee does not nor ever did own cars running on the road. Woodward and Blair, each deals on his own account; Lee is a mere common carrier.

2. Admitting the issue of a new "Freight Tariff," denied that they demand from "*individuals*" owning cars toll beyond four cents per ton per mile; and that they have collected or do demand or collect from complainants more toll than their charter allows.

3. That they are not engaged in commercial business, have not employed agents to solicit trade, their agents have not solicited trade; they are not, nor have they been, buying and selling coal and other commodities; they are not granting greater facilities to their agents than they extend to the complainants.

4. They do not demand more toll than is necessary to pay 12 per cent.; they have never declared a dividend greater than 8 per cent. Their surplus was expended in the purchase of the stock of the Franklin Railroad Company, the capital was increased by law and the purchased stock was divided amongst the stockholders of the defendants.

5. The complainants have no right to have their cars carried

over the defendants' road for less than the "Freight Tariff," nor to have freight carried on their own cars for less than if carried in the defendants' cars.

The court (Graham, P. J.) overruled the demurrer and appointed Charles Maglauhlin, Esq., examiner and master, before whom a large amount of testimony was taken. He examined and digested the evidence in an elaborate report and found and reported as follows:—

1. Woodward owned a large warehouse in Carlisle provided with sidings and other convenience of a forwarding merchant; also a large number of cars. He has been engaged at this warehouse for a number of years buying and selling grain and other commodities, in which produce and forwarding merchants usually deal.

Blair is a coal and lumber merchant occupying, as lessee, a yard for that purpose in Carlisle, with fixtures, &c.; his lease terminating June 1st 1870. Besides, he owns a number of cars, horses, carts, &c., necessary to his business.

Lee is a common carrier and forwarding merchant, occupying, as lessee, a warehouse in Carlisle, with yard and fixtures, his lease ending October 26th 1870; he with his brother own and use a number of carts, horses, wagons, &c.

All the complainants in pursuing their business " have been compelled to transport their commodities over the Cumberland Valley Railroad." They do not own any of the property nor do business in common. Each carries on business on his own account: " But they have a mutuality of interest in that they are necessarily compelled to make use of the railroad of the respondents for the purpose of carrying on the business of each, and that the management of said road, in the manner charged in complainants' bill, must necessarily work a common injury to them. Their business is of the same general character, although they respectively deal in different commodities, and the charging of excessive tolls, the engaging in commercial business by the company, and the discriminating in favor of the agents and cars of the company, must result in like injury to them all."

2. By their charter, the company are authorized " to charge and take toll for freight and transportation of passengers, goods, wares, merchandise and commodities transported upon said road, any sum not exceeding four cents per ton per mile for toll, and three cents per ton per mile for transportation." They are authorized also to charge for passage over their bridge from Bridgeport, the station on the west side of the Susquehanna, to Harrisburg, a distance of one mile, the same rates as if it were five miles. They charge for freight carried from Carlisle to Bridgeport, and from Bridgeport to Carlisle, the same rate as if it were carried across the river. This charge is illegal.

[Cumberland Valley Railroad Co.'s Appeal.]

The company are entitled to charge for freight in individual cars, a sum not exceeding four cents per ton per mile for toll, and, in addition thereto, such further sum as may be a reasonable and proper charge for the motive power and other necessary incidents thereto.

The company formerly discriminated in favor of freight carried in individual cars and the whole policy of the company was to encourage the investment of capital by private carriers and forwarding merchants, and under this policy large investments were made by the complainants and others for the purpose of carrying on their business.

The "Freight Tariff" of August 6th 1866, fixes the same rates for freight carried in individual cars as for that carried in the company's cars, and there is but one tabular statement of rates, which includes "transportation and toll and motive power." There are also "special rates" or charges less than those specified in the toll sheet, for certain classes of goods and certain persons. Freighters in the company's cars are not charged "return wheel toll," whilst it is charged to individual cars. The maximum weight of a car-load is 18,000 lbs., and for any excess double rates are charged on individual cars but not on the company's cars.

"On coal carried over the road in the cars of the Northern Central Railroad Company, the Treverton Coal Company, or the Cumberland Valley Railroad Company, there is allowed a drawback of ten cents per ton when the cars do not cross the bridge at Harrisburg, but no such reduction is made for coal carried in individual cars.

"A careful consideration of the evidence produced before the master has left upon his mind the conviction that the company was determined to secure for itself the entire carrying trade of the road, and that the change from its former policy of discriminating in favor of individual forwarding men and carriers, and the distinction now made in favor of freight on company cars and of persons doing business through company warehouses, are means towards the accomplishment of that end. And the result must necessarily ensue that competition will be destroyed and the company be given a monopoly of the carrying trade of the road, if the present policy of the company is to be continued.

"Looking upon the facts applicable to this particular allegation—the original and long-continued discrimination in favor of individual carriers, the large amount of money which has been invested in business, and the magnitude of the commercial interests which have grown up under this encouragement, to which interest the present policy of the company, if continued, must work serious, if not fatal injury—and applying to these facts the well-settled principles of law in favor of competition and against monopoly, as laid down by this court in the opinion overruling the demurrer to this bill, the complainants have clearly made out

a case requiring the interposition, in their behalf, of a court of equity."

As to the allegation that the company have engaged in commercial business, employed agents at their warehouses to solicit trade, and granted greater facilities to them than to others:

"The conclusion of the master is, that the company have no interest direct or indirect, in the profits or loss arising out of the business in which the agents are engaged. But he finds that the agents of the company are engaged in business upon their own account at the warehouses of the company, to which business they attend at the same time that they attend to the business of the company—and that they carry on this private business with the full knowledge and assent of the company; that the said agents have solicited from parties carrying trade for the company and custom for themselves in their private business; and that the said company have granted and continue to grant greater favors and facilities to the said agents than they grant to the complainants and other persons doing business over the road, which discrimination has resulted and must continue to result in injury to the business of complainants. * * *

"The net profits of the company, arising from their tolls and other sources of revenue, are more than are necessary to pay the dividend allowed by the charter.

"And the opinion of the master is, that the complainants have clearly made out their right to relief by the interposition of a court of equity, and he respectfully recommends to your Honors to grant them such equitable remedy as, under the circumstances of the case, may be necessary and proper."

Exceptions to the master's report were filed by both parties, and the court made the following decree:—

"And now, 18th August 1868: it is ordered, adjudged and decreed that the 'Cumberland Valley Railroad Company' be and they are hereby restrained and enjoined from charging more for toll and transportation or motive power, on freight carried on said road in the cars of individuals than on freight carried in the cars of said company, or the cars of any other company.

"From discriminating in favor of freight carried in company cars or the cars of certain individuals, and against freight carried in the cars of other individuals, either directly or indirectly, by allowing drawbacks on freight carried in company cars, or the cars of certain persons, which are not allowed when carried in the cars of other persons. From charging those using their own cars double rates upon an excess of freight over 18,000 pounds, while those using the company cars are permitted to carry 20,000 pounds.

"From charging return wheel toll to those carrying freight in

their own cars, when it is not charged to those carrying freight in the cars of the company.

"From charging coal and transportation on freight coming upon or leaving the Cumberland Valley Railroad at Bridgeport for five miles, more than it is transported on said road.

"And from charging for toll and transportation on said railroad more than will produce net profits arising from the resources of said company of 12 per cent. per annum upon the actual capital stock paid by the stockholders of $956,000, after deducting the current and probable contingent expenses. And that the defendants pay the costs."

The defendants appealed to the Supreme Court and assigned for error—the overruling their demurrer and the final decree.

*Henderson & Hays* and *F. Watts,* for the appellants.—If more tolls are collected than are necessary to pay the legal dividend, no remedy exists for private parties: Commonwealth *v.* Allegheny Bridge Co., 8 Harris 185 ; Irwin *v.* Dixon, 9 Howard 27 ; Buck Mountain Coal Co. *v.* Lehigh C. and Nav. Co., 14 Wright 99.

*H. Newsham* and *W. H. Miller* (with whom were *J. McD. Sharpe, L. Todd* and *F. M. Kimmell*), for appellees.—Is there a misjoinder ? All persons interested in the subject of a suit are necessary parties : Hunter's Suit in Equity 14 (104 Law Lib.) ; 1 Daniel's Ch. Pr. 240, 241 ; Wendell *v.* Van Rennsalaer, 1 Johns. Ch. 349; Story's Eq. Pl. § 94, 96; Brightly's Eq. § 531, 532 ; Adams's Eq. 714, 715; Williams *v.* Leech, 4 Casey 89. It is difficult to define multifariousness : Story's Eq. Pl. 530, 539 ; Adams's Eq. 690 ; Dunn *v.* Cooper, 3 Maryland 46. This objection is discouraged : Marshall *v.* Means, 12 Geo. 61 ; Carter *v.* Balfour, 19 Ala. 814; Varick *v.* Smith, 6 Paige 137 ; Carpenter *v.* Hall, 18 Ala. 439 ; Michan *v.* Hyatt, 21 Id. 813 ; Newland *v.* Rogers, 3 Barb. 432 ; Oliver *v.* Platt, 3 Howard 411 ; Watson *v.* Cox, 1 Ired. Eq. 389 ; Comwell *v.* Lee, 14 Conn. 524; Holman *v.* Bank of Norfolk, 12 Ala. 369; Foss *v.* Haines, 31 Maine 81; Brightly's Eq. § 555 ; Story's Eq. Pl. § 271, 569 ; Cahoon *v.* Bank of Utica, 3 Seld. 486 ; 1 Daniel's Ch. Pr. 384, 390. Equity has jurisdiction : Acts of 14th February 1836, § 3, Pamph. L. 789 ; February 14th 1859, § 1, Pamph. L. 39, Purd. 400, 402, pl. 1, 11 ; Hagner *v.* Heyberger, 7 W. & S. 106 ; Wesley Ch. *v.* Moore, 10 Barr 280 ; Kirkpatrick *v.* McDonald, 1 Jones 393 ; Yard *v.* Patton, 1 Harris 282 ; Stockdale *v.* Ullery, 1 Wright 487. As to corporations : Angell & Ames on Corp. § 391 ; Pennsylvania *v.* Wheeling Bridge Co., 13 Howard 518 ; Adams's Eq. § 486-9 ; 2 Story's Eq. § 826, 901, 924–930, 955; Hill *v.* Commissioners, 1 Parsons' R. 501 ; Frewin *v.* Lewis, 4 Mylne & Craig 254 ; Rhea *v.* Forsyth, 1

Wright 506; Heilman *v.* Union Canal Co., Id. 103; Kneedler *v.* Lane, 3 Grant 568; Finley *v.* Aiken, 1 Id. 93; Cochran *v.* Eldridge, 13 Wright 365; Commonwealth *v.* Pittsburgh and Connellsville Railroad, 12 Harris 159; Manderson *v.* Commercial Bank, 4 Casey 379; 1 Story's Eq. § 64. A railroad company cannot discriminate between customers: Sandford *v.* Railroad, 12 Harris 380; Shipper *v.* Pennsylvania Railroad, 11 Wright 340. The complainants, although private individuals, have a right to institute these proceedings: Gilder *v.* Merwin, 6 Whart. 522; Commonwealth *v.* Bank of Pennsylvania, 3 W. & S. 193; Agar *v.* Regent's Canal Co., Cooper's Rep. 77; Dun River Navigation Co. *v.* North Midland Railway Co., 1 English Railway Cases 135; Buck Mountain Coal Co. *v.* Lehigh Coal and Nav. Co., *supra;* Gravenstine's Appeal, 13 Wright 320. The dividends should not be on the aggregate capital of the Franklin Railroad and the defendants: Lehigh Crane Iron Co. *v.* Commonwealth, 5 P. F. Smith 448; Commonwealth *v.* C. P. and A. Railroad, 5 Casey 370; Citizens' Pass. Railway *v.* Philadelphia, 13 Wright 251.

The opinion of the court was delivered, July 6th 1869, by

THOMPSON, C. J.—The bill in this case was filed by the plaintiffs against the respondents, setting forth that they, the plaintiffs, are " merchants engaged in buying, selling and the transportation of grain, lumber, coal, salt and other commodities," and have invested largely in the construction of warehouses, cars, siding railroads, and other matters and things suitable and necessary for the transportation of merchandise on the railroad of the company, in accordance with the provisions of the charter of the same, and have been so engaged in the said transportation of merchandise for several years last past, and they charge that the defendants have established a tariff of tolls by which they demand of and from "individuals" rates of toll in excess of four cents per ton per mile, the amount limited in their charter, and have collected of and from the plaintiffs tolls so in excess of the sums aforesaid allowed to be demanded by their charter; that they, the railroad company, have, in violation of their act of incorporation, engaged in commercial business, buying and selling grain, lumber, coal, &c., and are granting special privileges and greater facilities to their agents in the business than to others; that they collect tolls to an extent greater than are necessary, to enable them to pay dividends of 12 per cent. " of net profits on the capital expended;" and, lastly, that they refuse to recognise the rights of the complainants to have their cars transported over their road for less tolls than those set forth in their freight tariff, subjecting them to pay the same tolls for freight per ton per mile, in their own cars, that they collect from others for freight carried in the company's cars. There is no specific prayer for relief in regard to

the last charge, but there is a prayer for injunction to enjoin as to each of the preceding specific charges, and a general prayer for such further and other relief as in equity they may be entitled to.

It is very clearly shown by the master in the case, that there was no community of business between the plaintiffs, while in one particular a common injury to two of them was charged, viz. ; to Woodward and Blair, in the alleged excess of charges per ton per mile for their cars passing over and being transported by the defendants on their road. The business of these two plaintiffs was otherwise diverse; the one being a dealer in grain, plaster and salt, and the other in coal and lumber. The third plaintiff was not the owner of any cars, nor a buyer or seller of either of the commodities dealt in by the other two. His business seems to have been that of a forwarder of goods, merchandise, produce, &c., and it is not shown wherein he had been specially injured by any matter charged in the bill, that ought to be redressed. The master has shown no case for equitable interposition in his favor, nor do I discover any in the testimony. He had no cars, as already said, on the defendants' road, and was, therefore, not charged excessive tolls, nor had he been engaged in trade, buying and selling commodities, and in this respect interfered with by the company. Even if they had been wrongfully engaged in trade, the individual interest was so essential to his being entitled to intervene, that without it he had no *status* in court at all, and he was not authorized to redress wrongs to the public, or to other individuals, by proceedings in equity. He therefore had no right individually, as we will show more fully herein, and none to complain that the company were transcending their franchises in the aggregate of tolls they were collecting. It seems to me he was an uninterested party in the case, and as to him, that the bill should have been dismissed : Adams' Eq. 314; 13 Wright 310.

There was a demurrer to the bill for multifariousness, and for other causes, among them, that the plaintiffs were not the proper parties to intervene to restrain the company in the collection of tolls, amounting, in the aggregate, to a sum which would produce dividends in excess of 12 per cent., even if the fact stood confessed.

It is undoubtedly true, unless it appeared on the face of the bill wherein there was a private injury to the parties complaining, that the bill as to this was demurrable; as it stands the charge is of an injury common to the whole public—a violation of a public franchise. This was a matter, therefore, for the public to redress, and not for individuals. The rule is well settled, that where the injury is no greater to a plaintiff than to the inhabitants at large, the remedy to redress the subject of complaint is with the public. This principle was applied to the remedy by injunction

in Bigelow *v*. The Hartford Bridge Co., 14 Conn. 565, and fully recognised by this court in The Buck Mountain Coal Co. *v*. The Lehigh Coal and Navigation Co., 14 Wright 91, and in Sparhawk *v*. The Union Passenger Railway Co., 4 P. F. Smith 401. There are numerous instances of the application of the rule in cases of quo warranto and mandamus by individuals; for a reference to many of which, I need only refer to the last two cases cited above.

As already intimated, there was nothing on the face of the bill which exhibited a case of mere injury to the plaintiffs from the aggregate sums realized by the company from tolls on their road. This was not averred or charged. The charge is general, that the company have transcended their corporate rights in this particular. The authorities referred to, show very conclusively that the public by its properly constituted officials, is alone competent to redress this wrong if it exist against itself. If these parties might file a bill for this purpose, every other citizen of the Commonwealth might do the same thing, and ignore the constitutional conservators of the public peace and welfare. This would lead to infinite confusion and disorder. The representatives of the public are the proper parties to redress public wrongs or violations of public law, as private parties are to redress their own wrongs. We think the court erred in refusing to sustain the demurrer to this portion of the relief prayed.

As to the demurrer for multifariousness, we agree that it is a difficult point to determine what will constitute multifariousness, especially where the prayer is for injunction exclusively. The various matters alleged or charged against the respondent, are like the counts in a *narr*., which, if all good, although variant in their contents, but not misjoinders, a judgment on either will be sustained. I see not therefore, why in the less technical process of proceedings in equity, if plaintiffs sustain any charge in their bill, which, if charged singly, would be entitled to be followed by injunction, that the bill should be dismissed for mispleading. In practice it is not so, especially in injunction bills. Several causes of injunction, where there is a privity between the plaintiffs and defendants, and which co-relate to the same general matter, or spring from a common cause, may undoubtedly be joined. This the authorities sustain. Neither does the charging of *two sources* of a right by a plaintiff, render the bill liable to the objection of multifariousness: Wel. Eq. Pl. 93, citing 13 Price 478 and McClel. 238, s. c. This goes a step beyond our preceding remark, which was intended only to present the case of a common ground, as being clear of multifariousness. I will not undertake, however, by argument to controvert the position taken on this point, proposing to sustain the conclusion I have arrived at on the question of the multifariousness of this bill, by what I find to be laid

down by careful compilers of the decisions on the point.  Welford, page 95, says a bill is not to be treated as multifarious because it joins the causes of complaint growing out of the same transaction, when all the defendants are interested in the same right, and where the relief sought is of the same general nature.  The best authorities concur in the test, that the reason a bill is multifarious is in consequence of the joinder of distinct, independent and separate causes of complaint requiring different defences and different decrees: Story's Eq. Pl. §§ 271, 271 a, 271 b, 272 *et sequitur*.

In the case in hand, although the charges in the bill are of distinct matters in a general sense, yet they arise out of the business of the plaintiffs with the defendants.  That is to say, the former complain that the latter in their business as a railroad injure them in several ways, which they specify and seek to prove.  It can hardly be said, therefore, that the consequences of multifariousness —difference in the pleadings, proofs and decree—exist in this case. The proofs all relate to the management of the road and its effect on the plaintiffs.  The decree must be an injunction, for that is the object of the bill, whether it shall contain one or several matters of restraint.  Upon the whole we are not convinced that the court below erred in overruling the demurrer for multifariousness; nor in overruling the third and last ground of demurrer, which we will not now specially notice.

The bill of the plaintiffs claims three grounds of injunction against the defendant.  One of them we have shown was demurrable, and should have been so held.  We hold it to be so now, and it is out of the case.  The first of the remaining two, is a prayer to restrain the defendants from demanding and receiving from the plaintiffs, rates of toll "exceeding four cents per ton per mile" for toll and transportation of freight in the cars of the plaintiffs.

This ground of injunction the master overruled, and was sustained by the learned judge on the authority of Boyle *v.* The Philadelphia and Reading Railroad Co., 4 P. F. Smith 310, applying it to the terms of the charter of the defendant granted by Act of 12th of March 1832, and as unaffected by the 18th section of the Act of 1849.  In the 14th section of the Act of 1832, the company is required to permit individuals to place cars on their road, subject to their limitations and restrictions as to construction, &c., for the transportation of passengers, goods, wares and commodities, and to take toll for freight and transportation at the following rates, viz.: "On all goods, produce, merchandise and commodities transported upon the said railroad and its branches, any sum not exceeding *four cents per ton per mile for toll, and three cents per ton per mile for transportation.*" Nothing could be clearer than that there are two subjects of

[Cumberland Valley Railroad Co.'s Appeal.]

charge allowed to the company in this clause as against freighters in their own cars. The one is for the use of the road constructed by it and used by such freighters; the others for the use of the power necessary to move their freight over the road,—the motive power. Within the purview of the section, they are as distinct as the farm is from the teams and implements of husbandry needed to cultivate it. The company has, therefore, the clear warrant of the charter for demanding the aggregate of the sums, viz., seven cents per mile per ton, for private freight in their own cars on their road. Within this limit no court can interfere with them. This is settled by the charter and by the decision in the case of Boyle v. The Reading Railroad Co., *supra.* The master finds that the company has not transcended this limit, and the court, very properly concurring with the master, dismissed this portion of the bill.

Another ground of complaint in the bill is, that the company have engaged in commercial business; and are granting, providing and furnishing greater facilities and powers to their agents in said business, than they extend to the plaintiffs and other persons owning cars, and doing business on and over the road, and that this is an injury to the plaintiffs.

The first clause of this charge is out of the case, as the master reports it unsustained by proof. The examination into the testimony shows the entire propriety of this conclusion. As a ground for injunction this was denied by the court, and we need not further remark upon it.

But there is a question presented in the latter clause of this complaint, and that is whether the company are liable to be enjoined for furnishing facilities to their agents in buying and selling "grain, coal, lumber, salt and other commodities in the county aforesaid."

It seems to me, that considering the question in the light of the facts, there is nothing in the charter of the company which forbids them allowing their agents the privilege to buy or sell produce while in their employ, and in allowing to them the use of their warehouses or depots in that business. The learned counsel of the defendant in his argument at bar, very satisfactorily showed wherein there was no impropriety in this. If the servants of the company were partly compensated for their services in this concession to them of such privileges, I see nothing wrong in it. The public is not injured by their engaging in the purchase of its produce, nor is anybody injured in the true sense of the term, while it may be that competitors in the business may be at some disadvantage in their competition. But advantage in position in doing business is not unlawful. It is what all seek for, and if one is more fortunate than another, there is no law which will deprive him of the results of his foresight and good luck.

In fact, the warehouses of a railroad company, are not for the public accommodation, but are necessary appendages to the company's business arrangements. No individual has rights in them, excepting as conceded to him by the company. Not so the road itself. There equality between all must exist up to its capacity to accommodate at the same rates for transportation, and as far as possible in accommodation: Sanford *v.* The Catawissa Railroad Co., 12 Harris 378. The company cannot discriminate in favor of itself, or any of its employees as against other freighters or transporters. This is clearly settled by the case just cited, as well as by others which might be cited. But when it is intended to invoke the control of the courts over a corporation, it ought to be specified with some certainty wherein that control is needed, and the relief desired should be asked for definitely. To this charge, there is no prayer for relief; nor to the charge of a violation of law in discriminating against the plaintiffs in favor of the agents of the company. It is true the court has enjoined on this clause of the bill as if the charge were specified as well as the relief prayed. But it is difficult to find acts of discrimination, either as defined by the bill or the proof, by reason of which the plaintiffs have any title to interfere as to this.

A rule in injunction cases is, that an injunction will not ordinarily be granted under a prayer for general relief, but must be expressly prayed: Hilliard on Inj. p. 43. And it seems to be settled, that whatever a complainant may prove, still the court will not decree more than he claims in his bill. The counsel under a general prayer ask for a different decree from that specifically prayed for: Horton's Appeal, 1 Harris 70; Del. & Hud. Canal Co. *v.* The Penna. Coal Co., 9 Id. 131.

In the last case, Lewis, J., says "the relief to be granted under this prayer (for general relief) must not only consist with the specific relief demanded, but must be sustained by the case made in the bill; and the allegations relied on, must not only be such as afford a ground of relief sought, but they must appear to have been introduced into the bill for the purpose, and not for the purpose of corroborating the plaintiffs' right to the specific relief prayed, otherwise the court would take the defendant by surprise, which is contrary to its principles." It would be difficult to believe that this clause, inserted as it is, in its general and indefinite form, without any prayer for relief, was introduced with any other view, than as a make-weight to some other branch of the case. We think the court ought not to have enjoined as to it in the state of the pleadings.

The same is true of the items in the injunction in regard to the alleged practice of the company in charging double rates on the excess over 18,000 pounds weight in individual cars;—from charging return wheel tolls on cars of private owners, and from charg-

ing toll and transportation for five miles on freight coming on, or leaving their road at Bridgeport, when it does not cross the bridge either way. There is not a hint that an injunction was meditated, for these reasons, by anything in the bill or as suggested by the prayers for relief. That such matters, if relied on, should have been stated, is a just rule. The defendants should have had an opportunity to plead to them, or answered them, and to prepare to meet them in testimony. They come only to meet what the bill presents ;—the issue made by bill and answer, otherwise the issue might change every hour as the proofs would vary. It is, therefore, essential that the proofs should support the bill, and the decree should follow the facts stated 'in it. To make a decree merely upon the testimony, would render proceedings in equity extremely hazardous. We are, therefore, of the opinion that the facts alleged in the bill do not support'these decrees. Had they been charged in the bill as the foundation of prayers for injunction, *non constat*, but that the defendants would have been able to show by answer or proof or both that these facts were essential regulations within their charter and which it was proper for it to make.

One or two matters still remain to be noticed.

The first injunction granted by the learned judge is, that the defendants be restrained and enjoined *from charging more for toll and transportation on motive power*, on freight carried on said road in the cars of individuals, than on freight carried in the cars of said company, or the cars of any other company.

It seems to me this decree is *ultra* the bill. There is no such charge in it. Nor is it sustained, taking the master's report for it. The bill charges that the company refuse to plaintiffs the right to have their cars transported over their road *at less rates* than those established by the toll sheet of the defendants to regulate their own charges. But it is nowhere charged that more is demanded. But suppose it were so, if the excess be no greater than the charter allows, it is not wrong to demand it. This amount is, as already stated, four cents for toll and three for transportation per ton per mile. This decree is predicated of the testimony only, and it contravenes the rules laid down, which require that the facts be charged in the bill. We see nothing else of which it is predicated.

True the master does say : " That in some instances, freight carried in the company cars, *is charged less than the company* charges complainants and others using cars on the road for the same freight." But the question may be well asked, must the company discriminate against itself—that is to say, charge excess of freight, to enable private car-owners to compete with it ? The public would surely be the loser by such a rule. We think this decree wrong, as unsupported by the bill—and wrong unless the fact was

established, which it is not, that the company charges more than its charter allows it to charge private transporters.

We should also notice, in passing, that the decree which in effect enjoins the allowance of drawbacks is also *ultra* the bill. As that may be a mode of discriminating between individuals or a mode of encouraging a new branch of trade and be wrong in the one aspect, while entirely right in the other, we hold that it should have been a substantial part of the bill, in order to support the decree. None of the decrees prayed for were ordered by the court, excepting one, which we hold the plaintiffs could not invoke. Those made, four in number, are not supported by the bill. It may be, that in a bill carefully prepared, charging clear, distinct grounds for interference in regard to some of the matters herein overruled because not charged as they should have been and without complication as to parties as in this bill, it might become necessary for the courts to control the company in some at least of its practices. As the case of the plaintiffs stands on this bill, we think it not entitled to be maintained, and it is therefore dismissed at the costs of the plaintiffs, without prejudice in regard to matters overruled as not properly charged in this bill.

Bill dismissed accordingly.