## Parke's Appeal.

64   137
144   123

1. The court has no right to interfere with a company's location of their road on the score of preference, within the limit of their charter.

2. The only question is, have the company exceeded a discretion on the subject apparent on the face of the act of incorporation?

3. A road twenty-four miles long was authorized "from a point on the Pennsylvania Railroad, *at or near* Parkesburg." *Held*, that a connection one mile and a half east of Parkesburg was not a transgression of the act *per se*.

4. The connection with the Pennsylvania Railroad was the great point; the place was subordinate.

January 19th 1870. Before Thompson, C. J., Read, Sharswood and Williams, JJ. Agnew, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Chester county*: In Equity: Of January Term 1870.

Robert Parke and others filed a bill against The Doe Run and White Clay Creek Railroad Co. The bill set out the incorporation of the defendants "with power to construct a railroad from a point on the Pennsylvania Central Railroad, at or near Parkesburg, in Chester county; thence by the most available route along the Buck run and that branch of White Clay creek that runs west of Chatham, to the state line;" that the plaintiffs were stockholders in the company; that instead of locating the road from a point "at or near" Parkesburg, the defendants have located and threaten to construct it from a point east of Pomeroy station, on the Pennsylvania Railroad, about one mile and a half east of Parkesburg; that Parkesburg is a prosperous and flourishing village, containing manufactories, &c., and about six hundred inhabitants, and an important passenger and freight station on the Pennsylvania Railroad, and Pomeroy is an inconsiderable

[Parke's Appeal.]

station with but two houses; that the most available route would be from Parkesburg down the valley to a small stream entering into Buck run, and down the same on the route indicated by the act.

The prayer was that the defendants be enjoined from proceeding with the location and construction of their railroad from Pomeroy station, or from any other point on the Pennsylvania Railroad, except at or near Parkesburg.

The defendants answered that the location at Pomeroy was in their judgment the most available, economical and advantageous that could be " at or near Parkesburg"; that to construct a road to Parkesburg would require one running parallel with the Pennsylvania Railroad for more than a mile over country expensive to construct, and through land whose owners were hostile to the road; that the engineer of the company was of opinion that a location with a terminus at Parkesburg was impracticable within the means of the company, &c.; that the location to Pomeroy would be advantageous to the stockholders, and, as the directors believed, was dictated by sound judgment and justice to the stockholders, and warranted by law.

The plaintiffs filed a replication, and an examiner was appointed. He reported a considerable amount of evidence, showing different routes, their grades, advantages and difficulties, and estimated cost in detail. The road in Pennsylvania would be about twenty-four miles, and it was designed to extend it under the laws of Delaware through that state, about twelve miles further to Delaware City, its final terminus. The evidence concurred in showing that wherever the northern terminus of the road might be, it must leave the Chester Valley at the point where Buck run passes from the valley, being about three-quarters of a mile south from the Pennsylvania Railroad. There was evidence that if the northern terminus were required to be at Parkesburg, the best mode of reaching that point would be to run the line from the exit of Buck run out of Chester Valley towards Pomeroy, and westwardly parallel and near the Pennsylvania Railroad till Parkesburg should be reached, and that there was no point between Parkesburg and Pomeroy at which a connection could be made with that road.

The court dismissed the bill, Butler, J., delivering the opinion, in which he said:— * * *

" The case presents but a single question: Is the point of connection with the Pennsylvania road at Pomeroy 'near Parkesburg?' If it is, we have no power to interfere. It matters not whether the route selected be the *best* or the *worst*, if it be within the limits prescribed by the statute. We can only interfere on the ground that the authority conferred has been exceeded by passing outside.

" Then is the point selected within the prescribed limits—is it

'near Parkesburg?' To ascertain the meaning of this term, as employed by the legislature, it is necessary to look at the object in view. This was the construction of a railroad to develop the resources of the country lying along the Buck run and White Clay creek, and to form an additional outlet from the Pennsylvania Railroad, towards the seaboard. It was not to enhance the value of private property, but to promote the public interest.

"It is further important in seeking the meaning of the legislature, to look at the country to be traversed by the road, and see what is its position in respect to Parkesburg and other points on the Pennsylvania road. In doing so, we find it to be such that the road *must* pass out of the valley where the waters of the Buck run leave it. This is conceded by the plaintiffs. From this point to the state line the propriety of the route selected is unquestioned. The controversy is therefore confined to the distance between the Pennsylvania road and the south side of the valley— *three-fourths of a mile.* The country here being already supplied with railroad facilities, the object of this part of the line can only be to form a connection with the Pennsylvania road. In view of these facts it would seem entirely reasonable that the point reached in that road by the most direct practicable route from the south side of the valley, where the defendants' road must pass out, was *within the contemplation of the legislature* when it employed the language quoted. What motive can be discovered consistent with the object of the statute for requiring the connection to be made *nearer* Parkesburg?

"If the road were continued from such point, parallel with the Pennsylvania road, or were carried up the south side of the valley westward, how would this promote the purpose in view? The country thus traversed being, as we have seen, already supplied with a railroad, would derive no advantage from it, while the additional useless expenditure which would thus be required would tend in some degree to defeat the enterprise itself. If the purpose of the legislature had been the improvement of Parkesburg, the language employed would require a different interpretation. But it was not. * * *

"We would not have it inferred, however, that if the route across the valley had been less direct, and the connection with the Pennsylvania road consequently further west, a case would be presented warranting our interference. As already remarked, we regard the object of the line here to be the connection with the Pennsylvania road. Its *selection* is entirely for the company. *Any* route adopted with a *proper view to this object* would, in our judgment, come within the limits prescribed by the statute; necessarily its connection with the Pennsylvania road could not be very far from Parkesburg. If this object were disregarded, and the road carried materially further west in pursuance of some

other purpose, as the trade of another neighborhood, or the improvement of private property, the authority of the company would be exceeded, and the interference of the court called for."

The plaintiffs appealed to the Supreme Court, and assigned the dismissal of the bill for error.

*W. MacVeagh* and *W. Darlington*, for appellants.

*J. S. Futhey* and *A. K. McClure*, for appellees, cited People *v.* Denslow, 1 Caines 177 ; People *v.* Collins, 19 Wend. 56 ; Griffin *v.* House, 18 Johns. R. 397

The opinion of the court was delivered, February 7th 1870, by

THOMPSON, C. J.—The question in this appeal is, whether the "Doe Run and White Clay Creek Railroad Company" has so located the northern terminus of its road as justified interference by the court below to compel it to change it; and this depends on whether the company has transcended the discretion on that subject in its act of incorporation. If it has not, the court below did right in refusing to interfere. If we should differ from its conclusion, we must interfere.

Neither the court below nor this court have any right to interfere with the location made by the company on the score of preference, if any be felt. Our only question is, whether it has or has not exceeded a discretion on the subject apparent on the face of the act of incorporation. The company was incorporated by an Act of Assembly of the 24th March 1868, "with power to construct a railroad from a point on the Pennsylvania Central Railroad at or near Parkesburg, in Chester county; thence by the most available route along Buck run and that branch of White Clay creek that runs west of Chatham to the state line." The length of the line is about twenty-four miles, and is intended to be connected with a line from thence to Delaware City, which in the aggregate will make a line of some thirty-six miles.

There is no testimony in the case to controvert the propriety of the location made near Pomeroy station on the Pennsylvania Central, a mile and a half east of Parkesburg, in an engineering point of view, or that it is not proper in view of the route indicated in the Act of Assembly, or that it is not for the best interests of the company. The facts found by the master seem to establish all these in favor of the company. But it is thought the location should have been at Parkesburg. But this is not what the legislature said, nor are we able to discern any controlling policy in requiring it to go there. The object in incorporating the company to construct the road, was to furnish an outlet to the trade of the flourishing valleys through which it was to run, and give them a connection with the Pennsylvania Central, which will furnish an outlet east and west to that section of country.

[Parke's Appeal.]

The connection with that line of road was the great point; the place was subordinate, as the discretion given shows. As Buck run crosses that road east of Parkesburg some half a mile or more, and as the line of the road was to follow down its valley, the designation in the charter " at or near Parkesburg," was with reference to the route of the road from its intersection with the Pennsylvania road, rather than anything else. This was undoubtedly the reason of the indefinite terminus in the act, and the discretion allowed in fixing it. We think that a mile and a half was not transgressive of the discretion allowed *per se*, and no fact has been proved to show any wilful abuse of the discretion exercised. As Parkesburg was not fixed as a point or terminus, it would require something very conclusive of impropriety, or mistake in the location to induce a court to control the company and compel it to extend its track a mile and a half, side by side, with the Pennsylvania road to Parkesburg, encountering heavy expenses in the construction as well as in procuring the right of way.

We need not dwell on these considerations. The company had a discretion to locate the terminus of its road elsewhere than at Parkesburg, and while they did so geographically near that place, and there is nothing to show anything wrong in fact or law, we have no right to interfere. With their discretion exercised within the limits of their act of incorporation, no court has any control or right to interfere.

We think the appellants have no case, and that this appeal must be dismissed.

> Decree affirmed, and appeal dismissed at the costs of the appellants.