## GENESEE-FORK IMP. CO. v. JAMES IVES.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF POTTER COUNTY.

Argued May 7, 1891—Decided October 5, 1891.

1. Where a company, incorporated under the act of June 22, 1883, P. L. 156, for the driving or floating of saw-logs, etc., has filed a bond under the provisions of § 5 of the act, it is not required either to agree with individual riparian owners as to damages, or to file bonds as security for their payment, under the provisions of § 4 thereof.

Statement of Facts.

2. In an action by such company to collect tolls for logs floated, the right to recover cannot be defeated by evidence that little, if any, improvement of the stream was made by the plaintiff, or that the defendant floated his logs upon the natural state of the water, without assistance from the plaintiff's splash-dams.

3. Nor, in such action, can the defendant call in question the reasonableness of the rate of tolls charged. So long as the company keeps within the limit fixed by the statute, its right to collect the tolls cannot be defeated, nor its discretion to fix the amount questioned collaterally: Bennett's Branch Imp. Co.'s App., 65 Pa. 242.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 435 January Term 1891, Sup. Ct.; court below, No. 205 (215 ?) December Term 1889, C. P.

To the number and term of the court below, the Genesee-Fork Improvement Company, incorporated under the act of June 22, 1883, P. L. 156, for the purpose of driving and floating saw-logs, lumber and timber on the Genesee fork of Pine creek, brought assumpsit against James Ives, to recover tolls charged. Issue.

At the trial, on December 18, 1890, the plaintiff having put in evidence its charter of incorporation, dated March 16, 1888, proved that a bond had been executed by the company on March 24, 1888, and filed, but that the bond after diligent search could not be found; * that the bond was in the sum of ten thousand dollars, conditioned that the company " shall indemnify all and every person whose property may be injured by reason of the construction and operation of the improvements of said corporation," and was approved by MORRISON, J. It was then shown that, after its incorporation, the company purchased a splash-dam, at the upper end of the stream, from one Loucks, and that in the spring of 1888, went on and got obstructions out of the stream, such as fallen trees and stumps, and put in a good many cribs to protect the banks of the stream from the floating logs and to keep the logs together so that they would float more freely.

William Dent, called for plaintiff:

Q. Do you know whether James Ives, after the granting

---

* It appeared, however, in the appellee's paper-book.

Statement of Facts.

of the charter to the company, and after the filing of this bond and the purchase of the splash-dam by the corporation, and the improvement by the corporation of the stream so as to make it much better adapted for floating logs, floated any logs on said stream by the aid of the improvements of the corporation?

Objected to, for the reason that the plaintiff has not as yet proven that it had any right to charge tolls or float logs in this stream, or assist anybody in floating logs in this stream; the company not having filed bonds as required by law or agreed with the owners.

By the court: Objection overruled, evidence admitted; exception.[1]

It was then shown that the banking place of the defendant was two or three miles below the splash-dam, and about two miles above the mouth of the stream; that the defendant had floated logs upon the stream in 1889, and that, by resolution of the board of directors passed on February 16, 1889, tolls for the year 1889 were fixed at ten cents per thousand, board measure.

James Ives, defendant, called in his own behalf, testified that his business was mostly lumbering; that he had floated logs from his place down for not less than twenty years; that he did not know of any improvements upon the stream made by the plaintiff company:

Q. State whether, in the spring of 1889, there was sufficient water for you to run your logs out, without the assistance of any of the improvements of the Genesee Fork Improvement Company?

Plaintiff's counsel object to the evidence as incompetent and irrelevant, for the reason that the required tolls had been fixed for that year previously, and that the franchise had been granted to this corporation to open this stream, giving it power to charge tolls.

By the court: Objection sustained; exception.[2]

Q. You may state whether in the spring of 1889, when you run your logs, whether the Genesee Fork was in any better condition for running logs than prior to the incorporation of this company?

Objected to as incompetent.

By the court: Objection sustained; exception.[3]

Charge of Court below.

Q. You may state, Mr. Ives, whether or not there had been any material improvement in the navigability of the Genesee Fork by the plaintiff in this case?

Objected to as incompetent.

By the court: Objection sustained; exception.[4]

Q. You may state, Mr. Ives, if it was possible during the years 1888–89, during the time for which they charge you for running your logs, whether it was possible to run those logs without assistance from the banks [splashes]?

Objected to as incompetent, especially concerning the year 1889.

By the court: The court sustains the objection so far as the year 1889 is concerned, and overrules the objection so far as the year 1888 is concerned; exception.[5]

Q. State whether or not ten cents per thousand feet for the year 1889 was a reasonable toll to be charged to you for the floating of your logs?

Objected to as incompetent.

By the court: Objection sustained; exception.[6]

Q. State, Mr. Ives, whether any improvements have been made in the Genesee Fork which would justify the charge and collection of any tolls of any amount?

Objected to as incompetent.

By the court: Objection sustained; exception.[7]

The case being closed on the evidence, the court, OLMSTED, P. J, charged the jury in part as follows:

The evidence is that in the spring of 1889, after the granting of this charter, Mr. Ives, the defendant, put logs in this stream, and that they were floated down about the distance of a mile and a half or two miles from the place where they were put in, over the ground covered by this charter and on down the main Pine creek. According to all the evidence, he put in that spring about five million seven hundred and twenty thousand and some feet of logs. The act of assembly authorizes these companies to charge a reasonable amount of tolls, not exceeding ten cents per thousand feet, for floating logs over the streams for which the charters are granted. This action is brought by this incorporated company for the purpose of recovering from Mr. Ives, the defendant, the sum of ten cents per thousand feet

Opinion of Court below.

for the quantity of logs which he floated over that portion of the stream covered by this charter in the spring of 1889.

We have been asked to entertain the idea in the trial of this cause that the general equities of this charge were open for investigation before the jury. We have been asked to permit evidence to be given before you showing that they had made but very slight improvements upon this stream. We have been asked to permit evidence to be given before you showing that the charge of ten cents was very excessive, and that persons who floated logs in this stream really derived but very little, if any, benefit from the clearing out and opening of this stream by this incorporated company. It seems to you, I do not doubt, a great hardship that the defendant was not allowed to give evidence tending to support that allegation; but we have excluded all that kind of evidence, and we are constrained to say from the act of assembly, as we understand it, and we say it not without some doubts, that you have, and the court have nothing to do with that question; that what is a reasonable charge per thousand feet, is not for the court to fix, and not for the jury to fix, but is for the company itself to fix, the law simply fixing the maximum price beyond which they cannot go. . . . . . But we feel constrained to say to you that this plaintiff is entitled to recover in this action the amount which it charged, ten cents per thousand feet for all the logs that the defendant Ives floated out of the stream during the year 1889; that was, five million seven hundred and twenty thousand feet and upwards, with interest upon that amount. This, as we have figured it hurriedly, amounts to six hundred dollars and twenty-three cents, and with your permission, I will direct the clerk to take your verdict for that amount in favor of the plaintiff.

—The jury returned a verdict in favor of the plaintiff for $600.23.

A rule for a new trial having been argued, the court, OLMSTED, P. J., on December 15, 1890, filed an opinion in part as follows:

The act of 1883, under which the charter was granted, requires in the fifth section the company to file a bond in the Court of Common Pleas, to be approved by the president judge, before taking possession of the stream. No such bond was

Opinion of Court below.

produced and read in evidence upon the trial, but after proof
of its execution and approval and delivery to the prothonotary,
evidence was allowed to be given of its contents.    The position
was taken and argued upon the motion for a new trial, although
not covered by the reasons filed in writing, that the charter
did not become operative until the filing of this bond, and that
the question whether such a bond had been filed should have
been referred to the jury.    It certainly would have been better
to have left this question to the jury, but in the hurry of the
trial it was overlooked, and the question comes now whether
we should grant a new trial for this reason.    We think not.
If the defendant could raise the question as a defence to this
action, we still think there was such clear, conclusive and indis-
putable evidence of the execution, approval and filing of the
bond, as made it not error for the court to admit parol evidence
of its contents and dispose of the question without referring it
to the jury.

We have nothing to do with the wisdom of the legislation
from which this charter sprang.    This charter has been granted;
the company has become a corporation, and it is our duty to
apply the law as we find it in Pennsylvania applicable to cor-
porations generally.

If no bond had been given at all by the corporation, could
this defendant have raised the question in this collateral
way? . . . . .

. —Citing Irvine v. Lumbermen's Bank, 2 W. & S. 202 ; Dyer
v. Walker, 40 Pa. 157; Farnham v. Canal Co., 61 Pa. 265;
Cumberland V. R. Co.'s App., 62 Pa. 218; Centre Turnpike
Co. v. McConaby, 16 S. & R. 140, the court held that such a
defence could not have been interposed, had no bond been filed
at all.    Upon the exclusion of the defendant's offers to show.
that the improvements made upon the stream by the plaintiff
resulted in little, if any, benefit to the defendant in the floating
of his logs, and that the tolls charged were unreasonable in
rate, the court, considering Clarke v. Bridge Co., 41 Pa. 160 ;
Bennett's Branch Imp. Co.'s App., 65 Pa. 242, and Carman v.
Navigation Co., 81* Pa. 412, held that the company, having
authority by law to improve the stream for the consideration
of tolls to be taken, would not lose its franchise because the
franchise was not in fact beneficial, there being no such con-

Arguments.

dition prescribed; that what was a reasonable rate of tolls was left by the act of 1883 to the discretion of the company, and that in such case all that could be required of the corporation was good faith.

The rule for a new trial having been discharged and judgment entered, the defendant took this appeal, specifying that the court erred:

1. In admitting plaintiff's offer.[1]

2-7. In refusing the defendant's offers.[2 to 7]

8. "In instructing the jury to find for the plaintiff for the full amount charged."

9. "The act of 1883 is unconstitutional, it being a supplement to the act of 1879, P. L. 20, which does not comply with § 6, article III. of the constitution, which requires the re-enactment of the sections amended."

*Mr. A. B. Mann* and *Mr. John Ormerod*, for the appellant.

That compliance with the provisions of § 4, act of June 22, 1883, P. L. 156, was a condition precedent to the recovery of tolls for floating on the stream, counsel cited: § 41, act of April 29, 1874, P. L. 104; Lord v. Water Co., 135 Pa. 131; distinguishing Irvine v. Lumbermen's Bank, 2 W. & S. 190, and Dyer v. Walker, 40 Pa. 157. The plaintiff could not recover tolls without having improved the stream: Carman v. Navigation Co., 81* Pa. 412; Scranton L. & H. Co.'s App., 122 Pa. 175; McCandless's App., 70 Pa. 216; West. Penna. R. Co.'s App., 104 Pa. 406. The defendant should have been permitted to show that he floated his logs upon the natural floods, without the aid of any improvements made by the plaintiff: Scranton L. & H. Co.'s App., 122 Pa. 154; Freeport Water-Works Co. v. Prager, 129 Pa. 605; Emerson v. Commonwealth, 108 Pa. 111. And to show that the charge made was unreasonable for the distance: Penna. R. Co.'s App., 128 Pa. 521; Commonwealth v. Railroad Co., 27 Pa. 339; Parke's App., 64 Pa. 137; Struthers v. Railway Co., 87 Pa. 282, 286; Clarke v. Bridge Co., 41 Pa. 160. That the act of 1883 was unconstitutional: Barrett's App., 116 Pa. 486.

*Mr. M. F. Elliott, Mr. H. C. Dornan* and *Mr. C. L. Peck*, for the appellee.

That the plaintiff's corporate franchises could not be attacked collaterally, counsel cited: 3 Wood's Railway Law, § 317; Irvine v. Lumbermen's Bank, 2 W. & S. 190; Murphy v. Farmers' Bank, 20 Pa. 415, 418; Dyer v. Walker, 40 Pa. 157; Cleveland etc. R. Co. v. Speer, 56 Pa. 325, 335; Farnham v. Canal Co., 61 Pa. 265, 271; Bennett's Branch Imp. Co.'s App., 65 Pa. 242, 251; Grant v. Coal Co., 80 Pa. 208. At common law, all streams that can be used for floating logs are public highways for that purpose: Barclay R. & C. Co. v. Ingham, 36 Pa. 194; Meyer v. Phillips, 97 N. Y. 485 (49 Am. Rep. 538); Brig v. Erie City, 27 Mich. 479; Olson v. Merrill, 42 Wis. 203. And the amount of tolls, within the statutory limit, is within the discretion of the plaintiff company: Cumberland V. R. Co.'s App., 62 Pa. 229; Struthers v. Railway Co., 87 Pa. 282; Penna. R. Co.'s App., 128 Pa. 509; Parke's App., 64 Pa. 137; Clarke v. Bridge Co., 41 Pa. 147.

OPINION, MR. JUSTICE GREEN:

After the trial of this case the bond given by the appellee in the course of its organization proceeding under the fifth section of the act of 1883 was found. The condition of the bond is in exact conformity with the requirement of the fifth section. It was duly approved by the court on March 24, 1888, and was therefore a full compliance with the statutory requirement in that regard. It is still contended, however, that the plaintiff was obliged to file another bond under the fourth section of the act, before it could exercise its corporate franchise. While we do not consider that the defendant is entitled to raise this question, in the present collateral proceeding, an examination of the fourth section satisfies us that there was no necessity for the giving of any other bond than the one required by the fifth section. The fourth section merely provides a method of proceeding for the assessment of damages sustained by the owners of dams and land along the streams, and simply directs that when the company and the owner cannot agree as to the damages, the assessment shall be made under the forty-first section of the act of 1874, to which the act of 1883 is a supplement. Upon recurring to that section, we find that it contains an elaborate provision for the assessment of damages by the appointment of viewers whose proceedings are prescribed in about the

usual manner in which views for such purposes are conducted. The section contains a further provision that when the parties cannot agree upon the amount of the damages to be paid, the corporation shall tender a bond to the party claiming damages, with condition that the corporation will pay such amount of damages as the party shall be entitled to receive, after the same shall have been agreed upon by the parties or assessed in the manner provided for in the act. It is plain that the duty to tender this bond arises as a part of the proceedings for the assessment of damages in the cases covered by the act of 1874. Had the act of 1883 contained no other provision for the giving of a bond than is contained in the act of 1874, it would have been necessary for the plaintiff to have given the bond required by that act. But the act of 1883 does contain a specific provision for the giving of a bond in its fifth section. The condition of the bond there required to be given is for the indemnification of " all and every person whose property may be injured by reason of the construction and operation of the improvements of the corporation." As this language is broad enough to include all owners of dams and lands on the stream in question, it is manifest that it is ample to confer every remedy afforded by the bond required by the forty-first section of the act of 1874. The giving of such a bond, therefore, is entirely unnecessary when the bond required by the fifth section of the act of 1883 has been given. The first assignment of error is not sustained.

The questions raised by the second, third, fourth and fifth assignments relate to matters which must be considered as having been settled when the corporate franchise was acquired. The right to appropriate the stream for the purpose of floating logs upon it was conferred by the act of 1883, under which the plaintiff was organized. It could not be tolerated that the right to exercise the franchise and collect the tolls allowed by the act, should be defeated by objections which deny the necessity of the franchise, or call in question the degree of perfection in the improvements made by the company. Although it might be possible for an owner to float his logs upon the natural state of the water, and without assistance from the dams, at times, that is no reason why the company may not claim the fruits of its franchise; and so also as to its right to collect tolls, which

is called in question under the sixth and seventh assignments. So long as the company keeps within the discretionary limit fixed by the statute, its right to collect the tolls cannot be defeated, nor its discretion to fix the amount questioned.

All of this was decided in the cases of Boyle v. Railroad Co., 54 Pa. 310, and Cumberland V. R. Co.'s App., 62 Pa. 218. In the latter case, THOMPSON, C. J., said: "The company has therefore the clear warrant of the charter for demanding the aggregate of the sums, viz., seven cents per mile per ton, for private freight in their own cars on their own road. Within this limit no court can interfere with them. This is settled by the charter, and by the decision in the case of Boyle v. Phila. & Reading R. Co., supra. The master finds that the company has not transcended this limit, and the court, very properly concurring with the master, dismissed this portion of the bill." In the case of Parke's App., 64 Pa. 137, we held that the court has no right to interfere with a company's location of their road, on the score of preference, within the limit of their charter. In the case of Struthers v. Railroad Co., 87 Pa. 282, the present Chief Justice said: "There is only one question remaining in the case, and that is, whether the court below should have received evidence to show that the company might have located its road upon another route, and thus have avoided laying the track upon High street. We are clearly of opinion that the learned judge was right in excluding evidence of this character, and also in his answers to the points in which the same question was presented. The discretion of the company in locating its road cannot be reviewed in this manner. The location was made in the exercise of an undoubted power." It was said in Parke's App., 64 Pa. 137: "Neither the court below nor this court has any right to interfere with the location made by the company on the score of preference, if any be felt. The only question is whether it has or has not exceeded a discretion on the subject, apparent on the face of the act of incorporation." In the case of Bennett's Branch Imp. Co.'s App., 65 Pa. 242, in which the company was authorized to clear out, improve, and use Bennett's branch, to use dams erected and erect new dams, and to use all of said dams and the waters of the said stream in the floating of saw-logs down the same, THOMPSON, C. J., in delivering the opinion, said:   .

Opinion of the Court.

" The company, having authority by law to improve the stream in the manner prescribed, for the consideration of taking toll on the lumber and logs floated thereon, would not lose its franchises, because the improvement was in fact not beneficial, there being no such condition prescribed. The legislature determined that question in granting the charter; and all the franchises granted will remain, in the absence of any limitation, until taken away by some direct action for that purpose, legislative or judicial. . . . The right to impose tolls as a consideration for the completion of an enterprise intended to benefit the public, is a right of government. It is conceded to the promoters as a compensation for the benefit, in contemplation of law, which every individual receives for an improved mode of transit of person or property. Individual complaints avail nothing against the right. These individual inconveniences must yield to the wants of the whole public. In most of these cases of improved navigation by companies or the state, if not all, individuals have always been found who would claim to be as well off without such improvements as with them; and yet they are obliged to pass over them with their property, and pay tolls. There is no reason in this for impeaching the validity of the law. This results from the accidency of location, and of this nobody is to blame but the owner, and he must submit to all legal consequences incident thereto."

The considerations so well expressed in the foregoing opinion practically dispose of all the questions arising upon the rejected offers of testimony covered by the several assignments of error now under discussion, including the question of the reasonableness of the tolls charged for the logs floated in 1889.

The only question discussed by counsel for the appellant under the eighth assignment of error is the correctness of the instruction that neither the court nor the jury had the right to determine what was a reasonable charge per one thousand feet, so long as the company kept within the maximum price fixed by the statute. As we have already held that this is a subject within the discretion of the company, we think there was no error in this portion of the charge. We are bound to consider that, so long as the charge did not exceed ten cents per one thousand, it was reasonable within the contemplation of the law.

The ninth assignment of error, as it is pressed upon our attention, raises no other question than the one covered by the eighth assignment. The full amount charged was ten cents per one thousand upon the number of feet of logs floated as stated in the testimony, and it is not claimed that there was any error in the court's statement of the quantity. It is true that the court did direct a verdict absolutely in favor of the plaintiff, although the right of recovery depended upon oral testimony. This ordinarily would be error, as it includes substantially an instruction that the jury must believe the plaintiff's witnesses, and that is a subject over which the jury has exclusive control. The ninth assignment is in violation of our rule of court, as it does not contain the language of the court in totidem verbis. Expressed as it is, and discussed as it is, it complains only of the amount charged, and not of the direction to find for the plaintiff. Were we at liberty to reverse for the technical error of the charge in this respect, we do not think any interest of the defendant would be subserved by our doing so. We prefer to say, therefore, that we disregard this feature of the assignment, because it is not properly expressed, nor is the question itself anywhere discussed in the argument for the appellant.

There is no force in the tenth assignment, as the act of 1883 is not an amendment to the act of 1879, but to the act of 1874, and the amended section of that act is correctly re-enacted in the act of 1883. Moreover, this point was not made in the court below, and no exception on the record raises the question.

Judgment affirmed.