[Civil No. 2986. Filed May 6, 1931.]

[298 Pac. 925.]

J. D. HALSTEAD LUMBER COMPANY, a Corporation, Appellant, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, a Corporation, Appellee.

Messrs. Cunningham & Carson and Mr. A. S. Gibbons, for Appellant.

Mr. Samuel White, Mr. J. L. B. Alexander and Messrs. Silverthorn & Van Spanckeren, for Appellee.

LOCKWOOD, J.—On March 12, 1923, one Jay J. Garfield, hereinafter called the contractor, entered into a written contract with George H. M. Luhrs and Catherina M. Luhrs, his wife, to construct a building in Phoenix. The Luhrs demanded that he furnish a building bond in the sum of $410,000 for the faithful performance of the contract, and he applied to the Hartford Accident & Indemnity Company, a corporation, hereinafter called plaintiff, for such bond. Be-

fore plaintiff executed the building bond it required the contractor and J. D. Halstead Lumber Company, a corporation, hereinafter called defendant, to execute in its favor an indemnity bond, agreeing to indemnify and save plaintiff harmless against any and all loss which it might sustain by reason of executing the building bond.

The contract for the building provided, among other things, as follows: "If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises may become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify him against such lien or claim, should there prove to be any such claim. After all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien upon said premises made obligatory in consequence of the contractor's default."

When the building was completed, it appeared that there were a large number of persons who asserted lienable claims against it. The contractor was financially unable to pay these claims, and shortly before the completion of the building assigned and transferred to defendant all the moneys then due and to become due the contractor under the building contract. The Luhrs then had on deposit in the Bank of California National Association at San Francisco, California, for the sole purpose of payment of the building contract, the sum of $42,946.20, which was the amount still due under its terms.

Plaintiff had been advised about this time by the Luhrs that a number of the bills were unpaid and that it might become liable for a greater or lesser amount on the building bond. It therefore sent one J. H. Van Tassel, who was the attorney in charge of fidelity

and surety claims in the Pacific department of plaintiff, to Phoenix, and, after investigation of the situation, he notified the Luhrs to either retain the final payment and apply it on lienable claims, or pay it to plaintiff for that purpose. They were willing to pay it to plaintiff, but the bank, having notice of the assignment by the contractor to defendant of his interest in this money, refused to release it to plaintiff until defendant agreed thereto. After some negotiations defendant executed the following document, and delivered it to Van Tassel: "Phoenix, Arizona, May 14, 1924. To the Bank of California National Association, San Francisco, California. The J. D. Halstead Lumber Company hereby requests and directs that the balance of $42,946.20 in your hands for final payment of contractor on Luhrs Building in Phoenix be paid to Hartford Accident and Indemnity Company for use by it in payment of lienable claims on Luhrs Building. J. D. Halstead Lumber Company. By J. R. Halstead, Vice-President. Assignee of Jay J. Garfield"—and the money in the bank was turned over to plaintiff. Thereafter it applied this money to the payment of various lienable claims against the building, all of which payments were approved before they were made, by both the contractor and by defendant. After the funds thus obtained were exhausted there were a number of other claims outstanding in the form of liens against the building. Suit was filed on some twelve of these claims, and after litigation four were denied and eight finally established as valid liens against the property. Thereafter the Luhrs paid the judgments and brought suit on the building bond against plaintiff to recover from it the amount of the lien judgments against the building as aforesaid, which suit ended in a judgment in favor of the Luhrs in the sum of $15,602.77, and plaintiff paid it.

Defendant had been requested by plaintiff to defend both the lien suits and the suit by the Luhrs against it, but failed and refused to do so, and plaintiff therefore employed attorneys to defend them. Thereafter plaintiff brought this suit to recover the amount of the judgment so paid by it, the sum of $275 for traveling expenses incurred by its representatives in checking up the lien claims, $122.55 costs, $1,530 attorney's fees paid in defending the suits aforesaid, and $1,470 additional attorney's fees claimed to be a reasonable amount for the prosecution of the present case.

There is no dispute as to these facts. The sole defense made in the action was that Van Tassel, in consideration of the assignment to plaintiff by defendant of the $42,946.20 in the bank as aforesaid, executed the following release:

"Phoenix, Arizona, May 14th, 1924.
"J. D. Halstead Lumber Company,
"Phoenix, Arizona.

"Gentlemen: In further consideration of your signing an order directing the Bank of California National Association to pay to the Hartford Accident & Indemnity Company the sum of $42,946.20, the balance due on the Luhrs Building and also agreeing to waive your lien rights against said Luhrs Building, we agree to cancel your liability on bond of indemnity which you signed for J. J. Garfield, Contractor, on Luhrs Building, Phoenix, Arizona.

"Yours truly."

This release, according to defendant, was signed, "The Hartford Accident & Indemnity Company, by J. H. Van Tassel." After the evidence was in, plaintiff moved for an instructed verdict, which motion was by the court granted, and the jury was directed to return a verdict in favor of plaintiff for the amount paid on the judgment, the expenses and costs incurred by plaintiff as aforesaid, the $1,530 already paid by it as attorney's fees, and for the $1,470 which it claimed was a reasonable attorney's fee for the present case.

Judgment was rendered on the verdict, and the usual motion for a new trial was made. The court became convinced, after investigation, that it was error to instruct a verdict for the amount of the attorney's fee not yet paid, and therefore ordered that plaintiff remit the $1,470 aforesaid, or a new trial would be granted. The *remittitur* having been filed, the motion for a new trial was overruled, and, from the judgment and order overruling such motion, this appeal has been taken.

There is but one question for our consideration on this appeal, and that is whether or not on the facts as stated above the court was justified in instructing a verdict in favor of plaintiff. The original release was not offered in evidence; defendant, however, offered what it claimed to be a copy thereof, contending that the original had been lost in some manner, and supported this copy by the testimony of several witnesses. Plaintiff disclaimed all knowledge of such release, and Van Tassel, whom defendant claimed had signed it, absolutely denied that he had ever done so. It is the contention of defendant that this raised an issue of fact for the jury. It is urged by plaintiff, on the other hand, that, regardless of whether or not such a release ever was executed by Van Tassel, it was immaterial for two reasons: (1) Because it was outside of the scope of his authority, and there was no evidence that plaintiff had ever ratified the same, or had any knowledge thereof. (2) Because, even if it was within the scope of Van Tassel's authority, or had been ratified by plaintiff, it was without consideration, and therefore void.

It is, of course, the unquestioned rule of law that, when a person executes a contract as agent, in order to bind his principal it must appear that it was either within the express or implied scope of his authority to make such a contract. *Brutinel* v. *Nygren,* 17 Ariz. 491, L. R. A. 1918F 713, 154 Pac. 1042; 2 C. J. 834,

and notes. The contract in question was one of a release of liability on an indemnity bond. The only evidence in the record as to the authority of Van Tassel is that he was the attorney representing the plaintiff in regard to fidelity and surety claims. It is the rule, supported by the great weight of authority, that an attorney has no right to compromise or release a claim, or enter into an accord and satisfaction thereof, in the absence of express authority thereto from his client. *Smith* v. *Washburn & Condon, ante,* p. 149, 297 Pac. 879; *United States* v. *Beebe,* 180 U. S. 343, 45 L. Ed. 563, 21 Sup. Ct. Rep. 371; *Preston* v. *Hill,* 50 Cal. 43, 19 Am. Rep. 647; *Pomeroy* v. *Prescott,* 106 Me. 401, 138 Am. St. Rep. 347, 21 Ann. Cas. 574, and notes, 76 Atl. 898.

The burden of proof is upon the party asserting the power of an agent to make a compromise agreement or to release a claim. *Brutinel* v. *Nygren, supra; Corbet* v. *Waller,* 27 Wash. 242, 67 Pac. 567; *Danziger* v. *Pittsfield Shoe Co.,* 204 Ill. 145, 68 N. E. 534; *Chaffe* v. *Stubbs,* 37 La. Ann. 656; *Fosha* v. *Prosser et al.,* 120 Wis. 336, 97 N. W. 924. Nor can such authority be established by the declarations of the agent. *Swinnerton* v. *Argonaut Land etc. Co.,* 112 Cal. 375, 44 Pac. 719; *Merrill* v. *O'Bryan,* 48 Wash. 415, 93 Pac. 917.

There is absolutely no evidence in the record of any nature that Van Tassel was ever given authority by plaintiff to release defendant from its indemnity bond. Neither is there any evidence that the alleged release was ever brought to the knowledge of plaintiff, and, in order to show a ratification or estoppel, such knowledge on behalf of plaintiff is necessary. *United States* v. *Beebe, supra; Cram* v. *Sickel,* 51 Neb. 828, 66 Am. St. Rep. 478, 71 N. W. 724; *St. Louis etc. R. Co.* v. *Blocker,* (Tex. Civ. App.) 138 S. W. 156.

The second question is as to the consideration for the release. It is claimed by defendant that the con-

sideration was the order by it to the bank to turn the $42,946.20 therein deposited over to plaintiff, and an agreement on its part that it would waive its own lien rights against the building in question. A promise to do something which a party is already legally obliged to do is no consideration for a contract. *Pleasant* v. *Arizona Storage & Dist. Co.*, 34 Ariz. 68, 267 Pac. 794; *Bedford's Exr.* v. *Chandler*, 81 Vt. 270, 130 Am. St. Rep. 1057, 17 L. R. A. (N. S.) 1239, 69 Atl. 874. If the defendant had filed a lien against the building in question and plaintiff in accordance with its contract on the bond had been forced to pay the same, it could, under its indemnity bond, have immediately recovered from defendant the very amount which it had paid under the judgment on the lien. In other words, when defendant agreed to waive any lien, it merely agreed to do directly what it would have been compelled legally to do indirectly. We are of the opinion that the waiver of the lien was merely carrying out, in substance, though not in form, its obligation to plaintiff under its indemnity bond, and it was therefore no consideration for a release.

The release of the money in the California bank presents a more difficult question. It appears from the evidence that this money had been raised by the Luhrs through a mortgage on the building, and was deposited with the bank as trustee for the sole purpose of paying the building contractor according to the terms of the contract. The provision in the contract quoted above authorized the Luhrs, whenever they had reason to believe there were any lienable claims against the building, to retain any payments due the contractor for the purpose of taking care of such liens. There is no dispute that, before the alleged release was executed, there were lienable claims against the building to an amount far greater than the money remaining with the bank, and that the Luhrs, the bank, the contractor, and defendant all had

knowledge of this fact, and that the Luhrs had directed that the money should be applied to such claims Defendant under its assignment from the contractor had no right to such money, or any portion thereof, until after the payment of all lienable claims. Its release of the money therefore lost it nothing. Had the money not been applied to the payment of the claims and plaintiff been forced to pay them, it could have recovered the amount so paid from defendant. We are of the opinion it gained nothing by the assignment except what it was already entitled to as a matter of law. In other words, the only effect of the assignment was to see that the money was used to pay what defendant was ultimately bound to pay anyhow, so far as plaintiff was concerned. We are therefore of the opinion that, so far as the judgment paid by plaintiff and for which it is suing in this action is concerned, the court properly instructed a verdict in favor of plaintiff on both of the grounds that the alleged release was without consideration, and that there was no evidence in the record that Van Tassel had authority to execute it, or that it was afterwards ratified by plaintiff.

The next question is whether or not the court was justified in instructing a verdict for attorney's fees. We need not consider the attorney's fee claimed to be due and unpaid in this case. The *remittitur* cured the error in regard to that, if any was indeed committed. It is not disputed that the sum of $1,530.00 for attorney's fees was actually paid in defending the lien suits. The indemnity bond contained the following provisions: ''That the undersigned will indemnify and save harmless the Surety and any other Surety Company which the Surety may procure to act as Surety or Co-Surety on said bond or undertaking, from and against any and all demands, liability, loss, cost, damage or expense of whatever nature or kind, including counsel fees, which the Surety shall or may,

at any time, for any cause, incur, sustain or be put to, for or by reason or in consequence of the execution of such bond or undertaking, and that the Undersigned will pay over, reimburse and make good to the Surety all sums and amounts of money which the Surety shall pay or cause to be paid or become liable to pay under such bond or undertaking, or as charges and expenses of whatever nature or kind, including counsel fees, by reason of the execution of such bond or undertaking or in connection with any litigation, investigation or other matters connected therewith, such payments to be made to the Surety as soon as it shall have become liable therefor whether it shall have paid out any such sums or any part thereof or not. That in any accounting which may be had between the Undersigned and the Surety, the Surety shall be entitled to charge for any and all disbursements in and about the matters herein contemplated made by it in good faith, under the belief that it is or was liable for the sum and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed.''

Whatever may be the rule as to liabilities for attorney's fees incurred but not actually paid, under the provisions of the contract of indemnity, which is of course binding on the parties, the rule is that it is not necessary for the indemnitee under such provisions to show the necessity of the payment, or the reasonableness of the amount. If the money was actually paid, the only way in which it can be attacked by the indemnitor is through a plea and proof of bad faith in the payment. *United States Fidelity & Guaranty Co.* v. *Hittle,* 121 Iowa 352, 96 N. W. 782; *United States Fidelity & Guarantee Co.* v. *Paulk,* (Tex. Civ. App.) 15 S. W. (2d) 100; *Cameron* v. *Barcus,* 31 Tex. Civ. App. 46, 71 S. W. 423. This

same rule applies to the amount of expenses and costs incurred.

The only remaining contention of defendant is that, since the jury is the sole judge of the credibility of witnesses, they might have entirely disregarded the testimony of the witness Van Tassel in regard to the payment of these expenses, in which case there would be no evidence supporting them, and that since the credibility of witnesses is always for the jury, the court erred in directing a verdict, at least as to those items; in other words, that, when the evidence in support of plaintiff's case is oral only, it is always error to instruct a verdict in his favor. There is one authority which upholds this theory of the law. *Genesee Fork Imp. Co.* v. *Ives,* 144 Pa. 114, 13 L. R. A. 427, 22 Atl. 887. But, so far as we can discover, it is without other support. The rule supported by the great weight of authority is that, when the evidence is such that it would be insufficient to support any other verdict, or that the court would feel constrained to set any other verdict aside, it should instruct a verdict for plaintiff, even on oral testimony. *Arizona Binghampton Co.* v. *Dickson,* 22 Ariz. 163, 44 A. L. R. 881, 195 Pac. 538; *Terry* v. *Sickles,* 13 Cal. 427; *Irwin* v. *Dole,* 7 Kan. App. 84, 52 Pac. 916; *Crawford* v. *Stayton,* 131 Mo. App. 263, 110 S. W. 665; *Clancy* v. *Reis,* 5 Wash. 371, 31 Pac. 971.

This disposes of all the material questions raised on the appeal.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.