NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

TRIYAR CAPITAL, L.L.C., an Arizona limited liability corporation,
*Plaintiff/Appellee*,

*v.*

REM INVESTMENT COMPANY, an Arizona general partnership;
SAMUEL J. SUTTON, a married man; ANNE V. SUTTON, a married
woman; JAMES VAN DOLAH and JANE DOE VAN DOLAH, husband
and wife; ASPEN RESEARCH LTD., an Arizona corporation,
*Defendants/Appellants*.

No. 1 CA-CV 15-0538
FILED 4-20-2017

———————————————

Appeal from the Superior Court in Maricopa County
Nos. CV2003-016817, CV2010-005058 (Consolidated)
The Honorable Mark H. Brain, Judge

**AFFIRMED**

———————————————

COUNSEL

Lake & Cobb PLC, Tempe
By Richard L. Cobb, Joseph J. Glenn, Hank E. Pearson
*Co-Counsel for Plaintiff/Appellee*

Dickinson Wright PLLC, Phoenix
By James T. Braselton, Michael J. Plati
*Co-Counsel for Plaintiff/Appellee*

Mandel Young PLC, Phoenix
By Taylor C. Young
*Counsel for Defendants/Appellants REM, Anne V. Sutton, Samuel J. Sutton, and James Van Dolah*

Wilkins Law Firm PLLC, Phoenix
By Amy M. Wilkins
*Counsel for Defendant/Appellant Aspen Research LTD*

---

**MEMORANDUM DECISION**

---

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

**¶1** This matter arises out of a sale of real property from REM Investment Company ("REM") to Triyar Investment Company, L.L.C. ("Triyar") and a related condemnation action. REM's former partners Samuel Sutton, Anne Sutton, and James Van Dolah (collectively with REM, "REM Appellants"), and Aspen Research Ltd. ("Aspen") challenge the superior court's judgment divesting the Suttons of any right, title, and interest in the disputed real property (the "Half Acre"), declaring Aspen's mortgage on the Half Acre void, dismissing the Suttons' and REM's counterclaim with prejudice, and awarding costs and attorneys' fees to Triyar. For the following reasons, we affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

I.      Purchase of the Property

        A.      The Agreement

**¶2** In May 2006, Shawn Yari ("Yari") entered an option agreement ("Agreement") with REM to purchase certain real property in Phoenix ("Property"). The Agreement did not contain a legal description, but it described the Property using tax assessor parcel numbers as "approximately 17 acres of land . . . (Parcels 301-30-002 and 301-30-003A)." It required escrow through First American Title Company ("First American") and required Yari to close on or before May 23, 2007.

¶3          In the Agreement, REM and Yari acknowledged that the Property was subject to an ongoing condemnation proceeding by the City of Phoenix ("condemnation litigation"). The Agreement clarified REM would (1) "remain fully responsible for all past and future legal fees, costs and expenses incurred in conjunction with the pending condemnation litigation" and (2) be "exclusively entitled to any proceeds from settlement or adjudication of the condemnation litigation." By its express terms, the Agreement "replace[d] any previous agreements," was "the entire agreement between the parties," and could only be modified or amended by a signed writing.

        B.          Conveyance of the Half Acre Outside of Escrow and Closing of Escrow

¶4          One month before the end of the option period and despite the two parcels being in escrow, the Suttons and Van Dolah, as the REM partners, conveyed the Half Acre within one of the parcels to the Suttons and recorded the deed outside of escrow. The REM Appellants did not inform Yari, Triyar, Triyar's attorney Gary Drummond ("Drummond"), or the First American escrow officer, Angelique Sizemore ("Sizemore") about the conveyance.

¶5          Less than one month after the transfer of the Half Acre and without knowledge of the conveyance, Yari exercised the option to purchase the Property.[1] First American's underwriter then prepared a legal description that contained a metes-and-bounds description of the Property ("Legal Description"). The Legal Description referred to the same tax parcel numbers as the Agreement, but also included a metes-and-bounds description which effectively excluded the Half Acre. The record does not reflect who provided information to First American's underwriter about the Legal Description, only that the underwriter prepared it and the Suttons

---

[1]          The REM Appellants assert REM previously entered an agreement with another buyer, Kohan, that excluded the Half Acre in 2004 and that Kohan assigned this agreement to Triyar. The description of the Property in that agreement was identical to the description in the Agreement, identifying the Property only by parcel number. The 2004 agreement did not mention a carve-out of the Half Acre, neither Triyar nor Yari had any part in drafting that agreement, and Yari testified he understood the 2004 agreement to address the same two parcels as the Agreement. Additionally, by its express terms, the Agreement "replace[d] any previous agreements," and was "the entire agreement between the parties."

knew it excluded the Half Acre. Two days before escrow was to close, Sizemore delivered supplemental escrow instructions incorporating the Legal Description to REM and Drummond.

¶6        Drummond noticed the metes-and-bounds description contained an additional exception that did not match previous descriptions of the Property he had received. He contacted a surveyor to determine what effect, if any, the additional exception had on the Property. The surveyor was only able to compare the Legal Description and title commitment to a 2005 survey that did not reflect the conveyance of the Half Acre. The surveyor told Drummond that the property described in the 2005 survey was the same property in the Legal Description and updated title commitment. Drummond testified he did not have any reason to believe the 2005 survey was inaccurate because the Property had been in escrow since 2004.

¶7        The day before escrow was to close, Yari assigned his rights under the Agreement to his company, Triyar ("Assignment"). The Assignment incorporated the Legal Description. That same day, the REM Appellants executed a special warranty deed conveying the Property to Triyar. The special warranty deed also incorporated the Legal Description.

¶8        Triyar and REM closed escrow on May 23, 2007. The Suttons and Van Dolah formally dissolved REM immediately after closing. Approximately two months after closing, Drummond discovered the conveyance of the Half Acre to the Suttons, and Triyar sued the REM Appellants for breach of contract and fraud in March 2010 ("2010 litigation").

II.     Consolidation with the Condemnation Litigation

¶9        In 2007, the superior court awarded the Suttons approximately $100,000 in condemnation proceeds from the City of Phoenix. The court later vacated the judgment due to an error in the description of the property that pervaded the entire condemnation proceeding and ordered the Suttons to deposit the condemnation proceeds with the court. The Suttons went to Aspen, of which Sutton had been president and his wife vice-president, borrowed the money to deposit with the court and granted Aspen a mortgage on the Half Acre in August 2008. By this time, Triyar had already purchased the Property pursuant to the Agreement and held record title to some of the condemned property.

¶10       Due to Triyar's purchase of the Property, the City added Triyar as a defendant to the condemnation litigation after the 2007

judgment was vacated. At trial in the condemnation action, Triyar argued it held title to the Half Acre and was entitled to condemnation damages on the basis that REM would no longer have legal standing in the condemnation action following closing. The superior court awarded condemnation proceeds to Triyar, found Triyar owned the Half Acre, and declared Aspen's mortgage void ab initio. However, we reversed, finding (1) the superior court should have awarded condemnation damages to REM and the Suttons; (2) material issues of fact regarding the parties' intent with respect to the Half Acre precluded summary judgment in favor of Triyar; and (3) the court lacked jurisdiction to expunge Aspen's mortgage because Aspen was not a party to the condemnation litigation. *City of Phoenix v. R.E.M. Inv. Co.*, 1 CA-CV 11-0190, 2012 WL 1255195, at *4-6, ¶¶ 19-21, 28 (Ariz. App. Apr. 12, 2012) (mem. decision).

¶11        On remand, the superior court consolidated the condemnation litigation and this matter. It also awarded REM and the Suttons damages relating to the condemnation.

III.    Entry of Default and Judgment

¶12        After consolidation, Triyar added Aspen as a defendant and, in addition to the claims for fraud and breach of contract, added claims for quiet title and imposition of a constructive trust on the Half Acre for Triyar's benefit. It sought, in the alternative, for the court to reform the warranty deed to include the Half Acre, establish Triyar's fee simple estate on the Half Acre, expunge Aspen's mortgage as to the Half Acre, and that the Suttons and Aspen be "barred and forever estopped from having or claiming any right, title, or interest in the Half Acre adverse to" Triyar.

¶13        After answering, Aspen unsuccessfully moved for summary judgment, contending the statute of limitations barred Triyar's quiet title action. In their answer, the REM Appellants filed a counterclaim for breach of contract, alleging Triyar had breached its obligations under the Assignment and Option Agreement when it pursued condemnation damages and sought to be named owner of the Half Acre in the condemnation litigation.

¶14        In January 2014, the superior court allowed counsel representing all the Appellants to withdraw, warning that failure of any corporate entity to appear through counsel within a month could result in their answer being stricken.  When REM and Aspen failed to appear through counsel by the specified date, Triyar moved to strike REM and Aspen's answers and enter a default against them for failure to appear

5

through counsel. The trial court granted the motion to strike, but did not state that a default was being entered.[2]

¶15 At trial, neither Aspen nor any of the REM Appellants appeared other than Sam Sutton, who represented himself. Triyar successfully moved for entry of judgment against Van Dolah, Anne Sutton, and Aspen for failure to appear, but did not request a default judgment.

¶16 After a bench trial, the superior court entered its final judgment, divesting the Suttons of any right, title, and interest in the Half Acre, declaring Aspen's mortgage on the Half Acre void, dismissing the Suttons' and REM's counterclaim with prejudice, and awarding costs and attorneys' fees to Triyar. In so ruling, it found Sutton's testimony less credible than Yari's and Drummond's. It concluded Triyar was entitled to judgment against Anne Sutton, Van Dolah, REM, and Aspen both because they failed to appear at trial and on the merits. The court found the Agreement gave Yari the right to purchase the Property, which included the Half Acre; the REM Appellants breached the Agreement both by transferring the Half Acre before the end of the option period and by doing so outside of escrow; Triyar was entitled to specific performance and an order requiring the Suttons to convey the Half Acre to Triyar due to REM's breach; and Triyar was entitled to an order expunging Aspen's mortgage on the Half Acre because Aspen had notice of the Agreement when it loaned the money. With regards to the REM Appellants' counterclaim, the court concluded Triyar did not breach the Agreement by pursuing a claim for condemnation proceeds. It also held Sutton was not entitled to legal fees in relation to his counterclaim because he failed to file an application for attorneys' fees in the condemnation litigation and because he failed to introduce admissible, credible evidence of damages incurred as a consequence of Triyar's pursuit of condemnation proceeds.

¶17 Appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2016).[3]

---

[2] However, later in the proceedings, the court recognized that a default had been entered against Aspen. It did not mention entry of default against REM.

[3] We cite to the current version of statutes unless changes material to this decision have since occurred.

**DISCUSSION**

¶18        When reviewing issues decided following a bench trial, we view the facts in the light most favorable to upholding the superior court's ruling. *Bennett v. Baxter Grp., Inc.,* 223 Ariz. 414, 417, ¶ 2 (App. 2010) (citation omitted). We will not set aside the court's findings of fact unless they are clearly erroneous or not supported by substantial evidence. Ariz. R. Civ. P. ("Rule") 52(a); *Nordstrom, Inc. v. Maricopa County*, 207 Ariz. 553, 558, ¶ 18 (App. 2004) (citation omitted). We are not bound by the superior court's holding on questions of law or mixed questions of law and fact. *Guirey, Srnka, & Arnold, Architects v. City of Phoenix*, 9 Ariz. App. 70, 71 (1969) (citations omitted).

I.      Sam Sutton

¶19        Sutton argues the court erred by concluding (1) Triyar proved its claim for breach of the Agreement, and (2) the REM Appellants did not prove their counterclaim for breach of the Agreement.[4] We find no error and affirm the judgment on the contract claims.

       A.     Sutton Breached the Agreement Because the Property included the Half Acre, but REM did not Convey the Half Acre to Triyar

¶20        Sutton asserts the court erred by concluding the parties intended the term "Property" in the Agreement to include the Half Acre. Sutton argues the clear and unambiguous terms of the Agreement did not include the Half Acre as part of the purchase, and therefore the superior court erred in interpreting "Property" to include all the Parcels.

¶21        We review issues of contract interpretation de novo. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010) (citation omitted). We interpret contracts with the purpose of ascertaining and giving force to the parties' intention at the time the contract was made. *Polk v. Koerner*, 111 Ariz. 493, 495 (1975) (citation omitted). We "look to the plain meaning of the words as viewed in the context of the contract as a whole" to determine the parties' intent. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz.

---

[4]      The superior court entered a judgment against the other REM Appellants and Aspen for their failure to appear at trial and on the merits. Thus, while we discuss the arguments about breach of contract in reference to Sutton, who appeared at trial and represented himself, these arguments also dispose of the other REM Appellants' arguments on the breach of contract claim and counterclaim.

238, 259 (App. 1983). Because this Court previously determined the Agreement's language is reasonably susceptible to more than one meaning, *see City of Phoenix*, WL 1255195 at *4, ¶ 20, extrinsic evidence may be admitted to interpret the contract, *Polk*, 111 Ariz. at 495 (citation omitted) ("Where the written language of the agreement offers more than one reasonable interpretation, the surrounding circumstances at the time that it was made should be considered in ascertaining its meaning.").

¶22 The Agreement defines the Property as "approximately 17 acres of land located 288' west of the southwest corner of 24th Street and Baseline Road in Phoenix Arizona (Parcels 301-30-002 and 301-30-003A)." It does not contain a legal description, identifying the Property by assessor tax parcel number only.

¶23 Sutton asserts the use of "approximately 17 acres" indicates the Property only included part of the Parcels. The Agreement's language and the record do not support this interpretation. Sutton agreed at trial that the Property consists of fewer than seventeen acres even if the Half Acre is included, therefore the significance of "approximately 17 acres" is ambiguous at best. Furthermore, Sutton testified that the Half Acre was part of Parcel 301-30-003A before REM's conveyance of the Half Acre to the Suttons, and Sutton approved plans for Triyar that included the Half Acre as part of the development of the Parcels. In light of the Agreement's use of parcel numbers that included the Half Acre at the time of the Agreement's execution, in the absence of any limiting language or admissible evidence[5] showing the parties intended to exclude the Half

---

[5] The REM Appellants assert Triyar should have understood the Agreement excluded the Half Acre due to communications between Sam Sutton and Kohan, who had originally negotiated an option agreement which included a metes-and-bounds description excluding the Half Acre. We reject that argument for the reasons stated *supra,* n.1. Nor can we consider evidence of antecedent understandings and negotiations to contradict the language of the contract. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993) (citations and quotation omitted).

Acre, and in light of the superior court's conclusion that Sutton was less credible than Yari and Drummond, we conclude the court did not err by determining that the Property as described in the Agreement included the Half Acre. Accordingly, REM breached the Agreement when it conveyed the Parcels to Triyar less the Half Acre.

¶24 Sutton also argues Triyar ratified the Legal Description by incorporating it into the Assignment and several closing documents. It is unclear whether Sutton argues this "ratification" effected a modification of the Agreement or served as notice to Triyar that the Half Acre was to be excluded. On either theory, we are unpersuaded.

¶25 "[A] contract, once made, must be performed according to its terms, and . . . any modification of those terms must be made by mutual assent and for consideration." *Demasse v. ITT Corp.*, 194 Ariz. 500, 509, ¶ 30 (1999) (citations omitted). Sutton has waived any challenge to the court's finding that there was no consideration to modify the Agreement because he did not object to the finding at the trial level. *See Winters v. Ariz. Bd. of Educ.*, 207 Ariz. 173, 177, ¶ 13 (App. 2004) (citations omitted) ("When a challenge is not raised with specificity and addressed in the trial court, we generally do not consider it on appeal."). Moreover, Triyar paid the full price for the Property under the Agreement, therefore REM was contractually obligated to convey all the Parcels to Triyar, including the Half Acre. *See J.D. Halstead Lumber Co. v. Hartford Acc. & Indem. Co.*, 38 Ariz. 228, 235 (1931) (citations omitted) ("A promise to do something which a party is already legally obliged to do is no consideration for a contract."). Because there was no consideration to modify the Agreement, we reject Sutton's argument that the Legal Description modified the Agreement and

---

Similarly, we reject Sutton's argument that Triyar should have been aware of the Half Acre's exclusion because the Legal Description identified the deed through which REM conveyed the Half Acre to the Suttons. An employee from the county assessor's office testified that it can take several months to update the assessor's records in response to a recorded document and that in this case, the assessor's records did not reflect the change for two years. Accordingly, Triyar would not have been notified of the change by referring to the assessor's records prior to closing. Additionally, Yari testified that even if he had seen the deed conveying the Half Acre, he would not have understood that it removed a half acre from one of the Parcels. In any case, Triyar's awareness of the deed is irrelevant because Sutton's transfer of the Half Acre out of escrow was a breach of the Agreement for the sale of both Parcels.

conclude the court did not err by finding the Property included the Half Acre.

**¶26**      Sutton's argument that the Legal Description acted as notice to Triyar that the Half Acre was not being sold to Triyar also fails. The superior court found that Yari, Drummond, and Sizemore's failure to understand that the Legal Description excluded the Half Acre was excusable, accepting their explanation and finding them more credible than Sutton. Sutton contends the court erred in making that finding. We review a finding of fact for clear error. *Nordstrom*, 207 Ariz. at 558, ¶ 18 (citation omitted). We will not reverse if there is evidence supporting the finding. *Id.*

**¶27**      As we have already noted, the Agreement was clear that the option included the Half Acre. The Legal Description, which contained both the metes-and-bounds description and the parcel numbers from the Agreement, was conveyed by First American's underwriter to Sizemore, Triyar, and Drummond two days before escrow was to close. Drummond noticed a change in the Legal Description and, relying on a survey done while the Property was in escrow, concluded that there was no conflict between the listing of the Parcels in the Agreement and the Legal Description. Sutton could have expressly disclosed to Triyar that the Half Acre had been sold while the Property was in escrow and that the metes-and-bounds description excluded the Half Acre, but he did not. An employee from the county assessor's office also testified that it took nearly two years for the assessor's records to reflect the conveyance of the Half Acre.[6] Nor was the Aspen Mortgage recorded until August 2008, well after close of escrow. It was only after escrow closed, once Triyar and Drummond met with the City of Phoenix in relation to the condemnation litigation, that Yari and Drummond realized the Legal Description did not include the Half Acre. Based on these facts and on the superior court's credibility findings, we conclude the court did not err in finding that Triyar's failure to understand the Legal Description did not include the Half Acre prior to closing was excusable. *See Vinnell Corp. v. State ex rel. Bob Skousen Contractor, Inc.*, 109 Ariz. 87, 89 (1973) (citation and quotation omitted) ("If, after a careful consideration of the words of a contract, in the light of all the relevant circumstances . . . a plain and definite meaning is achieved by the court, a meaning actually given by one party as the other

---

[6]    These facts also dispose of Sutton's argument that the Half Acre was not included because the title was limited by any matter of record.

party had reason to know, it will not disregard this plain and definite meaning and substitute another that is less convincing.").

   B.  REM Breached the Agreement By Conveying the Half Acre to the Suttons outside of Escrow

**¶28**  The superior court also found REM breached the Agreement because it had sold the Half Acre to the Suttons out of escrow. Sutton does not deny REM conveyed the Half Acre to the Suttons out of escrow before the end of the option period. Rather, he argues that doing so was not a breach of the Agreement because the Agreement did not originally include the Half Acre. Because Triyar demonstrated that the Agreement included the Half Acre, REM's conveyance of the Half Acre to the Suttons outside of escrow before the end of the option period also constituted a breach of the Agreement's express terms. *See Dunlap v. Fort Mohave Farms, Inc.*, 89 Ariz. 387, 391 (1961) (citations omitted) (stating an option-giver who repudiates or makes performance impossible or more difficult by conveying land to a third person is liable for damages). The superior court accordingly did not err by concluding Triyar was entitled to judgment against the REM Appellants on its breach of contract claim for the sale of the Half Acre out of escrow.

   C.  The Counterclaim

**¶29**  Sutton argues the superior court erred in holding Triyar did not breach the Agreement by seeking condemnation proceeds and in denying Sutton his legal fees or damages related to Triyar's pursuit of

condemnation proceeds. We affirm because Sutton failed to offer any admissible evidence of damages in support of his counterclaim.[7]

¶30        Sutton's only support for his claim of damages was his testimony that REM incurred $143,900 in attorneys' fees fighting Triyar in the condemnation litigation. Although Sutton sought attorneys' fees from the condemnation proceeding as part of his damages, he failed to present an affidavit or any other documentation proving these fees.

¶31        The superior court was "not compelled to believe the uncontradicted evidence of an interested party." *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 13 (2000) (citation omitted). The court did not find Sutton's testimony credible, and we defer to the court's credibility determinations. Rule 52(d).

¶32        Sutton claims the court erred by instructing him that evidence of attorneys' fees as damages for the alleged breach would only be received at the end of the case in the form of a fee application compliant with

---

[7]      We note that although the REM Appellants assert the court erred in failing to address the second component of their damages—namely, damages sustained as a result of the court order requiring disgorgement of the settlement proceeds after the court vacated the 2007 condemnation judgment—the REM Appellants had no right to these damages. The disgorgement order was not a result of Triyar's involvement in the case, it was a result of setting aside the 2007 condemnation judgment. *See Hirsch v. Ariz. Corp. Comm'n*, 237 Ariz. 456, 466, ¶ 41 (App. 2015) (citations and quotation omitted) ("Disgorgement wrests ill-gotten gains from the hands of a wrongdoer . . . and is meant to prevent the wrongdoer from enriching himself by his wrongs."); *see also State ex rel. Goddard v. Gravano*, 210 Ariz. 101, 105, ¶ 14 (App. 2005) (citation omitted) (noting "disgorgement has not been historically viewed as punishment, but rather . . . has long been recognized as civil" and "is designed in part to ensure that defendants do not profit from illegal acts; a nonpunitive goal"). Additionally, the superior court already determined the amount of condemnation damages owed to the Suttons, and the City of Phoenix has already paid them.

*Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183 (App. 1983).[8] However, this is not supported by the record. When Sutton failed to produce admissible evidence of his fees beyond his conclusory testimony, the court asked whether he had any other documentation, using a *China Doll* affidavit to demonstrate the level of specificity with which a claim for attorneys' fees is typically supported. At no point during the trial or in its findings of fact and conclusions of law did the court state it was denying Sutton's request for lack of a *China Doll* affidavit.

**¶33** Because Sutton failed to prove his damages, the court did not err by dismissing his breach of contract claim. *Am. Pepper Supply Co. v. Fed. Ins. Co.*, 208 Ariz. 307, 310, ¶¶ 13-20 (2004) (clarifying that plaintiff must prove the existence of the contract, its breach, and the resulting damages by a preponderance of the evidence to prevail on a breach of contract claim); *see Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006) (citation omitted) ("We may affirm the trial court's ruling if it is correct for any reason apparent in the record.").

II.     The Non-Appearing Appellants

        A.      REM, Anne Sutton, and James Van Dolah

**¶34** REM, Anne Sutton, and James Van Dolah challenge the superior court's entry of a judgment against them for failing to appear at trial. Although they argue that such judgment was a default judgment, that is not supported by the record. The court expressly stated the judgments against them were on the merits. Moreover, when a defendant pleads to the merits of a complaint but fails to appear at trial, the court cannot enter a judgment on default. *Gillette v. Lanier*, 2 Ariz. App. 66, 68 (1965). Instead, the court may proceed to hear the plaintiff's evidence as if the defendant were present and render appropriate judgment if the plaintiff establishes its prima facie case. *Id.* (citation omitted). Because REM, Aspen, Anne Sutton, and James Van Dolah pled to the merits of Triyar's complaint and

---

8       In *China Doll*, this Court established that the starting point in determining the reasonableness of attorneys' fees is the actual billing rate charged by the lawyers involved in the matter. 138 Ariz. at 187-88. It accordingly concluded that applications for awards of attorneys' fees should be supported by an affidavit of counsel indicating the type of services provided, the date the service was provided, the identity of the attorney providing the service, and the time spent providing the service. *Id.*

then failed to appear at trial, the judgments against them were judgments on the merits rather than default judgments.[9]

**¶35**    Accordingly, we review the record only to determine whether Triyar established its prima facie case against these appellants. *Id.* at 68. "A prima facie case requires that there be evidence to justify, not necessarily compel, an inference of liability." *Robledo v. Kopp*, 99 Ariz. 367, 371 (1965).[10]

---

[9]    Although the superior court struck REM and Aspen's answers and later recognized it had entered a default against Aspen, they still pled to the merits by moving for summary judgment and filing a counterclaim. *See Coulas v. Smith*, 96 Ariz. 325, 329 (1964); *Gillette*, 2 Ariz. App. at 68. "The words 'otherwise defend' refer to attacks on the service, or motions to dismiss, or for better particulars, and the like, which may prevent default without presently pleading to the merits." *Coulas*, 96 Ariz. at 328 (quotation and citation omitted). Because Aspen moved for summary judgment after filing its answer and REM filed a counterclaim, they "otherwise defended" and the judgments against them were not "defaults" in the sense of Rule 55(b). *See id.* at 329; *Gillette*, 2 Ariz. App. at 68.

[10]    The REM Appellants also argue the superior court erred in striking REM's answer and the entry of default against REM. They have waived these arguments because they failed to oppose Triyar's motion to strike REM's answer and enter default. *See* Rule 7.1(b)(2) (allowing the court to summarily grant a motion if the opposing party does not file a responsive memorandum); *State v. Holder*, 155 Ariz. 83, 85 (1987) (citation omitted) ("Absent fundamental error, error is usually considered to be waived on appeal unless it was objected to at trial.").

In any event, Rule 16 allows a court to strike a party's pleadings in whole or in part if the party "fails to obey a scheduling or pretrial order or . . . to meet the deadlines set in the order." Rule 16(i)(1)(A); Rule 37(b)(2)(A)(iii). We review an imposition of sanctions under Rule 16 for an abuse of discretion. *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 13 (App. 2010) (citation omitted). To prevail, REM must also show it incurred some harm as a result of the court's time limitations. *See Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 91, ¶ 30 (App. 1998) (citation omitted).

To establish a prima facie case of breach of contract against REM, Anne Sutton, and Van Dolah, Triyar needed to prove the existence of a contract, the breach of the contract, and resulting damages. *Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 94 (1963) (citation omitted). REM, Anne Sutton, and Van Dolah do not dispute the existence of the Agreement or the resulting damages, only whether conveying the Half Acre constituted a breach.

¶**36** Because we have already concluded Triyar proved its case for breach of contract, *supra*, ¶¶ 20-27, the superior court did not err by concluding Triyar was entitled to judgment against REM, Anne Sutton, and Van Dolah on its breach of contract claim.

---

Here, after allowing the withdrawal of Appellants' counsel, the superior court provided a month's warning to the parties that "[a]ny corporate entities must make an appearance through counsel no later than February 11, 2014 or their answer/complaint may be stricken." Despite this warning, REM did not appear through counsel before the court's deadline and, in fact, only appeared through counsel after entry of the final judgment over a year later. Although the court must give a corporation a reasonable opportunity to cure its ineffective performance before entering default, *Boydston v. Strole Dev. Co.*, 193 Ariz. 47, 50, ¶ 12 (1998) (citation omitted), appearing though counsel after the final judgment has been entered is insufficient to cure a defective appearance, *see State v. Eazy Bail Bonds*, 224 Ariz. 227, 229, ¶ 12 (App. 2010) (citation omitted).

REM also asserts the superior court erred in striking its answer for failing to appear through counsel because REM no longer existed as an entity at the time, and to the extent its interests needed to be represented, all necessary parties in interest were already parties in the suit. We disagree.

In Arizona, "a partner cannot represent a partnership, except in an attorney-client relationship." *Hunt Inv. Co. v. Eliot*, 154 Ariz. 357, 363 (App. 1987). No counsel appeared on behalf of REM, and Sutton and the other partners could only represent their own individual partnership interests. *Id.* Because REM did not appear through counsel before the expiration of the court's deadline, the court did not abuse its discretion in striking REM's answer and entering default against it.

B.        Aspen

¶37        Aspen asserts the superior court erred by (1) failing to grant summary judgment to Aspen on the quiet title claim because of the statute of limitations and (2) entering judgment against Aspen.

1.        Denial of Summary Judgment

¶38        We may review a denial of summary judgment if the order was based on a point of law. *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, 433, ¶ 11 (App. 2001) (citation omitted). The applicability of a statute of limitations is a legal issue, *see Cook v. Town of Pinetop-Lakeside*, 232 Ariz. 173, 174, ¶ 6 (App. 2013) (citation omitted), therefore we may review the court's denial of Aspen's motion for summary judgment, *see Strojnik*, 201 Ariz. at 433, ¶ 11 (reviewing a court's denial of a motion for partial summary judgment because denial was based on court's interpretation of statutory and common law).[11] We review questions of law concerning the statute of limitations de novo. *Cook*, 232 Ariz. at 175, ¶ 10 (citation omitted).

¶39        Aspen argues that because Triyar asserted a claim for quiet title and reformation against Aspen but was not in possession of the Half Acre, the statute of limitations began to run in August 2008 when the Suttons recorded the mortgage on the Half Acre. *See Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 266, ¶ 13 (App. 2013) ("A statute of limitations defense to a quiet title action turns on whether the claimant asserts a possessory interest in the land."). Aspen argues that because Triyar did not seek to quiet title until December 2012, more than four years after the claim arose, the claim was time barred under A.R.S. § 12-546 (2017) or, alternatively, A.R.S. § 12-543 (2017) (providing for a three-year limitations period).

---

[11]        Triyar argues we should not address Aspen's argument regarding the denial of summary judgment because Aspen failed to state it was appealing the order in its notice of appeal. However, a notice of appeal from a final judgment includes any intermediate orders entered which relate to the final judgment. *Rourk v. State*, 170 Ariz. 6, 12-13 (App. 1991) (citations omitted).

¶40 We disagree. First, Aspen failed to raise A.R.S. § 12-546 at the trial level, waiving any argument that it applies here.[12]

¶41 Second, even if A.R.S. §§ 12-546 or 12-543 applied, they did not bar Triyar's claims because, as Triyar pointed out below, the statute of limitation was tolled by the superior court's October 2009 order in the condemnation action "expunging the void mortgage" held by Aspen.[13] *See City of Phoenix v. Sittenfeld*, 53 Ariz. 240, 249 (1939) (citations omitted) ("[W]here the decision in a pending action is practically conclusive as to the nature and extent of a party's rights, and where his success thereunder is a prerequisite to his right to maintain a new action, the statute does not begin to run as to the new action until the determination of the pending suit, which decides whether the new right of action exists."). The court's order rendered the mortgage void from October 2009 until this Court reversed the superior court's ruling in April 2012. Accordingly, the limitations period ran from the recording of the mortgage in August 2008 until at the latest October 2009, and from the April 2012 memorandum decision until Triyar filed its amended complaint in December 2012. Thus, the total elapsed period was less than two years. Even if we were to assume the four-year limitation in A.R.S. § 12-546 or the three-year limitation of 12-543 applied, it would not bar Triyar's action against Aspen. The superior court accordingly did not err in denying Aspen's motion for summary judgment. *See State v. Perez*, 141 Ariz. 459, 464 (1984) (citations omitted) ("We are obliged to affirm the trial court's ruling if the result was legally correct for any reason.").

## 2. Entry of Judgment

¶42 Although Aspen asserts the superior court abused its discretion in entering a default judgment against it, the judgment against Aspen was on the merits. Accordingly, we review the record to determine whether Triyar proved its prima facie case for a declaratory judgment

---

[12] At the trial level, Aspen argued for the application of A.R.S. §§ 12-542 (1985) (trespass, two years), 12-522 (2017) (claim by right of possession, two years), 12-523 (2017) (adverse possession, three years), and 12-530 (2012) (home inspector liability, four years) applied. It also asserted A.R.S. §§ 12-525(a) (2017) and 12-526(a) (2017) (five- and ten-year limits for actions to recover real property in adverse possession).

[13] Indeed, in the condemnation action the superior court issued at least two earlier minute entries in June and September 2009 which held that Triyar owned title to the Property.

against Aspen. *Gillette*, 2 Ariz. App. at 68. This merely requires evidence to justify, not necessarily compel, an inference of liability. *Robledo*, 99 Ariz. at 371.

**¶43** An option-giver may not repudiate or make the performance of a contract impossible or more difficult by conveying land to a third person. *Dunlap*, 89 Ariz. at 391 (citations omitted). "If the option-giver does convey the property to a third person, . . . the third person, *if he has actual or constructive notice of the existence of the option*, takes the land subject to the option." *Id.* (emphasis added) (citations omitted). The third person may also "be liable for damages and an action for specific performance of the contract." *Id.* (citations omitted).

**¶44** "[A] corporation is bound by the knowledge acquired by, or notice given to, its agents or officers which is within the scope of their authority and which is in reference to a matter to which their authority extends." *Fridena v. Evans*, 127 Ariz. 516, 519 (1980). Additionally, a client is bound by the knowledge of its attorney. *Hackin v. First Nat'l Bank of Ariz.*, 5 Ariz. App. 379, 385 (1967) (citation omitted).

**¶45** Here, sufficient evidence supports the superior court's finding that Aspen had notice of the Agreement when the mortgage was granted. Sutton, former president and founder of Aspen, testified that Jane Shrum, Aspen's secretary and treasurer, "basically [ran] the operation" at Aspen with regards to making loans and negotiated the mortgage. Shrum drafted and acted as notary with regards to the August 8, 2008 loan agreement for the mortgage, and she also acted as notary for the special warranty deed transferring the property from REM to Triyar, and the affidavit of value. Additionally, Shrum served as Sutton's legal secretary and assistant for approximately twenty-five years. Sam Sutton was the President and Anne Sutton was Vice President of Aspen until at least July 2006, overlapping with REM's signing of the Agreement on May 17, 2006. In light of this evidence, the court did not err in concluding Triyar proved a prima facie case that Aspen had notice of the Agreement when REM granted a mortgage on the Half Acre.

III.    Attorneys' Fees and Costs on Appeal

**¶46** The REM Appellants request an award of attorneys' fees and costs pursuant to A.R.S. § 12-341.01(A) (2013). Since they have not prevailed, we deny that request. Triyar requests an award of its costs and attorneys' fees on appeal pursuant to A.R.S. §§ 12-1103 (2017), 12-342 (2017), and Arizona Rule of Civil Appellate Procedure ("ARCAP") 21. Because

Triyar successfully complied with the requirements of A.R.S. § 12-1103(B), and Appellants have not disputed the basis for a fee award under A.R.S. § 12-1103 in their reply briefs, we award Triyar its attorneys' fees on appeal. We also grant Triyar's taxable costs on appeal upon timely compliance with ARCAP 21.

## CONCLUSION

**¶47** For the foregoing reasons, we affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA