NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 22 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GUARANTEE COMPANY OF NORTH AMERICA USA, a Michigan corporation, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> FALCONE BROTHERS & ASSOCIATES, INC., an Arizona corporation; et al., <br><br> Defendants-Appellants. | No.   20-15317 <br><br> D.C. No. 4:18-cv-00157-FRZ <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, District Judge, Presiding

Submitted February 4, 2021[**]
Phoenix, Arizona

Before:  W. FLETCHER, MILLER, and HUNSAKER, Circuit Judges.

In this diversity action, Falcone Brothers & Associates, Inc. and related

entities (collectively, Falcone) appeal the district court's order granting summary

judgment to plaintiff Guarantee Company of North America USA (GCNA).

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

GCNA issued surety bonds to help Falcone secure public construction projects with the city of Tucson, Arizona. When Falcone failed to pay its suppliers, GCNA became liable to pay them, and GCNA sought reimbursement from Falcone under an indemnity provision in their contract. *See* A.R.S. § 34-222(A)(2). The district court awarded GCNA its full costs and attorney's fees associated with paying the suppliers and defending related lawsuits, including one brought by Cemex Construction Materials South, LLC. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.     The district court correctly awarded GCNA its costs and fees. Falcone admits that it is liable to GCNA but argues that because the indemnity provision is "general" and not "specific" under Arizona law, GCNA may not recover losses caused by its "active" negligence. *Pioneer Roofing Co. v. Mardian Constr. Co.*, 733 P.2d 652, 671–72 (Ariz. Ct. App. 1986). We need not decide whether the provision is general or specific because Falcone has not presented material facts showing that GCNA committed any active negligence.

Falcone's first theory is that GCNA was actively negligent when it provided its certification to Tucson to release the final payment to Falcone, even though GCNA knew about Cemex's pending claim. But Falcone points to no authority showing that GCNA had a duty to refrain from providing that certification, or that the certification was a representation that the project was claim-free. The statute

2

that requires Arizona municipalities to withhold a retention pending project completion, A.R.S. § 34-221(C), says nothing of the sort. GCNA's certification also does not say the project is claim-free; it simply indicates that Falcone should receive its final payment. And Falcone does not claim that it failed to fully perform under its contract with Tucson, such that the certification might have been false.

Falcone points only to a declaration from its president to show that it relied on GCNA's certification as an assurance that there were no outstanding claims. However, that declaration does not show that GCNA had a duty to refrain from providing the certification and therefore breached that duty. Falcone invokes a surety's duty to act in good faith towards its principal, *see Dodge v. Fid. & Deposit Co.*, 778 P.2d 1240, 1242–43 (Ariz. 1989) (in banc), but it would be anomalous for that duty to require GCNA to take actions to prevent Falcone from being paid for its work. The contract between the parties, which "significantly influences" the extent of GCNA's duty, *Diaz v. Phoenix Lubrication Serv., Inc.*, 230 P.3d 718, 722 (Ariz. Ct. App. 2010), contains no such indication.

Even if Falcone could establish a duty, it cannot show that GCNA's certification caused GCNA's losses. Falcone says that it relied on GCNA's certification that there were no pending claims, but as Falcone concedes, it knew about Cemex's claim—it just believed it had a defense to that claim. Falcone says that if GCNA had not provided its certification, the "retention would not have been

3

released by the City of Tucson and a fund would exist from which Cemex could recover if it proved the validity of its claim." But a fund did exist—Falcone possessed it. Last, Falcone says that "GCNA was convinced that Cemex's claim was invalid and participated in the Cemex Litigation," and thereby accrued years of costs. But the premise of Falcone's defense in that lawsuit—Falcone's lack of notice—had nothing to do with GCNA, which tendered its defense to Falcone. *See Cemex Constr. Materials S., LLC v. Falcone Bros. & Assocs., Inc.*, 2017 WL 5054218 (Ariz. Ct. App. Nov. 3, 2017) (unpublished). No evidence suggests that the certification is what legally caused GCNA's losses.

Falcone's second theory is that GCNA should have unilaterally paid off the Cemex claim instead of allowing it to go to litigation. But as with its first theory, Falcone provides no evidence that GCNA had any obligation to do so, or that this decision legally caused the relevant losses. Falcone had equal authority to settle the claim: It initially owed the amount due; it contrived the legal theory that ultimately lost; and it conducted the litigation throughout those six years. Even if GCNA's decision not to intercede in Falcone's legal defense could be considered negligent, it would be only "passive" negligence tantamount to a "failure to discover a dangerous condition" or "take adequate precautions" against the prospect that Cemex would prevail. *See Estes Co. v. Aztec Constr., Inc.*, 677 P.2d 939, 942 (Ariz. Ct. App. 1983). GCNA is entitled to full recovery.

2.      The district court did not abuse its discretion in awarding GCNA its full attorney's fees. *See Charles I. Friedman, P.C. v. Microsoft Corp.*, 141 P.3d 824, 830 (Ariz. Ct. App. 2006). Under Arizona law, if a surety incurs an expense, "the only way in which it can be attacked by the indemnitor is through a plea and proof of bad faith in the payment." *J.D. Halstead Lumber Co. v. Hartford Accident & Indem. Co.*, 298 P. 925, 928 (Ariz. 1931). Falcone does not allege bad faith in connection with GCNA's attorney's fees, nor does it dispute that GCNA is entitled to recover them. Rather, without contesting the validity of any specific payments, Falcone argues that GCNA's fees are generally unreasonable because GCNA tendered its defense in the Cemex litigation to Falcone.

"The general rule is that attorney's fees and costs are recoverable as part of the indemnification." *Schweber Elecs. v. Nat'l Semiconductor Corp.*, 850 P.2d 119, 125 (Ariz. Ct. App. 1992). While the district court had discretion to limit any such award to a reasonable amount, *Geller v. Lesk*, 285 P.3d 972, 976 (Ariz. Ct. App. 2012), *as amended* (Sept. 26, 2012), *abrogated in part on other grounds by American Power Prods., Inc. v. CSK Auto, Inc.*, 396 P.3d 600, 604 (Ariz. 2017), Falcone has failed to prove that GCNA's fees were unreasonable. Just because GCNA tendered its defense to Falcone does not mean that GCNA could not represent its interests in a lawsuit in which it was a named defendant. Given that the litigation lasted more than six years and included two trials, two appeals, and a

5

petition for certiorari, we discern nothing clearly excessive about GCNA's total fees, especially considering the adversarial aspects of GCNA and Falcone's joint defense.

**AFFIRMED.**